Hanon *vs.* State.

(Decided 6th February, 1885.)

JAMES HANON *vs.* STATE OF MARYLAND.

*Wife Beating—Act of 1882, ch. 120— Competency of the Wife as a Witness—Proof of Marriage.*

On an indictment under the Act of 1882, ch. 120, against a husband for beating his wife, the wife is a competent witness to prove the beating, and also to prove their marriage.

Proof by her that the marriage ceremony was performed by a Justice of the Peace in the State of Pennsylvania, is sufficient without proof of the authority of that officer to perform the marriage rite.

On an indictment under the Act of 1882, ch. 120, the marriage may be *prima facie* established by presumptive evidence, such as reputation and cohabitation.

APPEAL from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., STONE, IRVING, RITCHIE, and BRYAN, J.

*De Warren H. Reynolds,* and *William Brace,* for the appellant.

*Benjamin A. Richmond,* State's Attorney for Allegany County, and *Charles B. Roberts, Attorney-General,* for the appellee.

RITCHIE, J., delivered the opinion of the Court.

The appellant was indicted under the Act of 1882, chap. 120, for brutally assaulting and beating his wife. At the trial the State offered the alleged wife as a witness, and offered to prove by her as follows:

"That she is the wife of the traverser, was married to him four years ago last May; at that time she and traverser were residents of Maryland; they drove together to Wellersburg, Pennsylvania, and were there married by a justice of the peace, and have since lived and cohabited together as man and wife in Maryland; and that the traverser assaulted and beat her as laid in the indictment."

The traverser objected to the evidence on the following grounds:

"1. Because she is incompetent to testify against him in this case.

Hanon *vs.* State.

" 2. Because if competent for any purpose she is still incompetent to prove her marriage with traverser.

" 3. The traverser objected to such proof of marriage unless accompanied by evidence that under the law of Pennsylvania a justice of the peace has power to perform the marriage rite ; (which proof the State did not offer.)"

These objections were all overruled by the Court and the testimony admitted.   To this ruling the traverser excepted and took the present appeal.

The contention of the traverser, that, the witness was generally incompetent to testify, is based on the assumption that the Act referred to established a new and statutory offence distinct from that of assault and battery as known to the common law, and that hence the witness falls within the general rule that a wife cannot testify for or against her husband in a criminal case.

But even if the statute creates a new offence, it does not. necessarily follow that the wife could not be a witness. The principle of necessity, by which under the common law a wife is permitted to testify against her husband on a charge affecting her liberty or person, would seem equally applicable to a statute designed to protect her in either of these respects.  The object sought by the present statute is to shield her from the personal violence of her husband,. and the danger of defeating this object and the difficulty in supplying the proof, were the wife excluded as a witness, would be the same as at common law.

In *Roscoe's Criminal Evidence, page* 125, under the head of " Witnesses," sub-title " Cases of Personal Injury," it is stated : " Upon an indictment under the repealed statute of 3 *Henry* 7, *c.* 2 for taking away and marrying a woman contrary to her will, she was a competent witness against her husband *de facto ;*" and also, that, " Upon an indictment under Lord Ellenborough's Act against a man for shooting at his wife, the latter was admitted as a witness by Mr. Baron GARROW after consulting HOLROYD, J., upon the ground of the necessity of the case.""

But it is unnecessary to decide whether the common law exception to a wife's incompetency as a witness would, upon sound reasoning, extend to the Act of 1882, did it create a new and distinct offence; as we are clearly of opinion that this statute does not have this effect, but simply attaches a new penalty to a well-known common law misdemeanor, when attended with certain circumstances of aggravation. The only difference, virtually, between the statute and the common law in relation to assault and battery, is, that while under the latter the beating of a wife, and in a brutal manner, would be circumstances of aggravation which the Judge in meting out the common law punishment of imprisonment would take into consideration; by the statute the Judge is vested with the discretion to impose corporal chastisement instead of, or in addition to, the imprisonment, when the offence is thus aggravated.

The mere affixing by statute of a penalty different from that at common law, or adjusting it to specified circumstances of aggravation or mitigation, where the crime or misdemeanor is in its nature susceptible of such variations, without losing its essential character, is not the creation of a distinct offence. As an illustration of this, it has been decided that our Act of Assembly of 1809, chap. 138, in dividing the common law crime of murder into first and second degrees, so distinguished from the circumstances accompanying the homicide, and attaching corresponding penalties, did not create a new offence. *Weighorst vs. State,* 7 *Md.,* 451; *Davis vs. State,* 39 *Md.,* 375. The statute of 1882 falls within the principle of these decisions in respect of the point under consideration.

The offence contemplated by the Act of 1882 being essentially that of assault and battery at common law, the exceptional capacity of the wife to be a witness against her husband is preserved in proceeding under the statute. But while the statute does not create a new offence, an

Hanon *vs.* State.

indictment thereon falls within the rule, recognized in the case referred to in 39 *Md.*, that, "when a statute creates an offence or increases the punishment of an offence, the indictment founded upon such an offence must aver the circumstances which constitute the offence or increase the punishment." As a new and severer punishment, namely, that of whipping, is provided by the statute, where the beating is brutal, and inflicted by a husband on his wife, it follows, that the nature of the beating must be laid as characterized by the statute, and that the victim of the offence must be described as the wife. The evidence, of course, must support the averments, and this involves the necessity of proving the marriage; which brings us to the consideration of whether the wife of the traverser is a competent witness for that purpose, and what kind of proof is necessary to establish it.

The necessity of permitting the wife to testify against her husband, springs from the duty of protecting her person from violence, and the impunity with which from the privacy and close relations of married life assaults upon her might otherwise be perpetrated. In allowing her to testify, her disability of coverture is as much removed as if she were a *féme sole* or a stranger in the case, and she therefore has all the capacity any other witness would have. This being so, she is as competent to prove the marriage as any one else would be. It is not a fact arising from the confidential relations of the parties, but a fact in its very nature, notorious and public; and we perceive no reason why she cannot supply the proof of this essential link in the chain of facts necessary to be proved, as well as show the aggravated character of the assault.

As to the kind and degree of proof required to establish the marriage, looking to the nature of the inquiry, and the object to be subserved, the case is not one, we think, demanding the direct and positive evidence required

in such criminal cases as bigamy and adultery, where the validity of the marriage tie and its violation are the vital and dominant facts at issue, but one in which the marriage may be *prima facie* established by presumptive evidence, such as reputation and cohabitation. To require greater strictness of proof in the absence of evidence to rebut such presumptions, would often defeat and render ineffectual the shield extended by the statute. Our population is largely composed of foreign born citizens, who were married abroad, and of native citizens removed from the States in which they were married. To require direct proof of the celebration and regularity of the marriage rite would practically often rob suffering wives of the humane protection designed by the law, and furnish miscreant and brutal husbands, while *prima facie* sustaining the marital relation, with a ready means of frustrating the statute.

But assuming, as seems clear, that the proof of living together and holding themselves out as man and wife would, unless rebutted, be sufficient to gratify the statute, the witness in this case went further and testified that she and her husband were married in Pennsylvania by a justice of the peace.

The question arises, how is the evidence of the marriage from the fact a marriage ceremony was ostensibly performed, and thereafter the parties lived together and cohabited as man and wife, and so held themselves out, affected by the circumstance that a justice of the peace performed the ceremony, unaccompanied by evidence that under the law of Pennsylvania he had power to do so. It must operate in one of two ways: either as overthrowing the presumption of marriage that would arise from the other facts, or in aiding that presumption. We think all the presumptions are in favor of the legality of the marriage. As the rite was performed in a foreign jurisdiction by an official of that jurisdiction, and the rite was

Hanon *vs.* State.

followed by an observance of the relations usually existing between married persons, it is to be presumed that the officer was acting within the scope of his authority and that a lawful marriage was celebrated. *Rex vs. Inhabitants of Brampton,* 10 *East,* 282. The presumption is further aided by the general rule that a man acting in a public capacity is presumed to be duly authorized to do so. *Am. Crim. Law,* (*6th Ed.*) *sec.* 713, and authorities cited.

*Wharton* in his *Criminal Evidence, sec.* 827, lays it down: "When a man and woman have lived together as man and wife, and have been recognized as such in the community in which they live, their marriage will be held *prima facie* conformable so far as concerns its solemnities with the practice of the *lex loci contractus.*" In the notes to the text, he cites *Harrod vs. Harrod,* 1 *Kay & John.,* 15, and quotes from LUSH, J., in *Regina vs. Cresswell,* 13 *Cox C. C.,* 126; *L. R.,* 1 *Q. B. D.,* 446, who said: "The fact of the marriage service having been performed by a person acting in a public capacity, is *prima facie* evidence as to the person's legal capacity to perform the service." Among other authorities cited by *Wharton,* he refers to *Redgrave vs. Redgrave,* 38 *Md.,* 97, in which this Court says: "In this case proof has been offered from which marriage can be inferred; and, in such case, the presumption is, that the marriage was duly and legally contracted according to the law of the place or country in which it occurred; and when contracted in a foreign State or country, the validity of such marriage is recognized here, although it may not have been attended with the same formal ceremonies as are required for the celebration of a valid marriage by the law of this State."

*Rulings affirmed, and*
*cause remanded.*

(Decided 6th February, 1885.)