GILBERT, EXECUTOR, ET AL. *v.* FINDLAY COLLEGE ET AL.

[No. 191, October Term, 1949.]

*Decided June 8, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*F. Neal Parke,* and *D. Eugene Walsh,* with whom was *Charles O. Fisher* on the brief, for the appellants.

*Theodore F. Brown,* with whom was *A. Earl Shipley* on the brief, for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

Alva C. Garner died on February 27, 1947, leaving a last will and testament which is the cause of the controversy in this case. By the first five paragraphs of his will he made pecuniary bequests to various legatees, and then by the 6th, 7th, 8th, 9th and 10th paragraphs he made bequests in identical form, three of which are before us in this case. Paragraph 6 is as follows: "I

give and bequeath unto Findlay College, Findlay, Ohio, as an annuity the sum of Five Thousand Dollars, for the benefit of my niece, Minnie R. Garner, during her life. The interest to be paid to her semi-annually, at a rate according to her age."

Paragraph 7 is to the Foreign Mission Board of the General Eldership of the Churches of God, is for the benefit of the testator's sister, Emma F. Garner, and is for $5,000. Paragraph 8 is to the Board of Missions to the Jews, Brooklyn, New York, is for the benefit of the testator's sister Emma F. Garner, and is for $2,000. Paragraph 9, is to the Moody Bible Institute, Chicago, Illinois, and is for William E. King, the testator's clerk, and the amount is $2,500. Paragraph 10 is to the Moody Bible Institute, Chicago, Illinois, and is for Mrs. William E. King, wife of William E. King, the testator's clerk, and the amount is $1,500.

The executor, together with Minnie R. Garner, Emma F. Garner and Isabel Garner, a great niece of the testator, who was the beneficiary under paragraph 11 of the will, filed a bill of complaint for the construction of the will. Emma F. Garner later died. Minnie R. Garner, her administratrix, represents her interest in this appeal. Proper parties were made in the case, and the Chancellor, on December 16, 1948, assumed jurisdiction of the further administration of the estate and decreed that the bequests made in paragraphs 6, 7, 8, 9, 10, 11 and 12, were valid. Subsequently, the executor filed his report and account which was ratified on May 11, 1949, except as to the distribution under the above seven paragraphs, which was reserved. Thereafter, Minnie R. Garner, filed an election to take the legacy of $5,000 left her under paragraph 6, and Minnie R. Garner, administratrix of Emma F. Garner, filed an election to take $5,000 under paragraph 7 and $2,000 under paragraph 8. Isabel Garner also filed an election to take $3,500 left her under paragraph 11. The Chancellor filed a decree on December 20, 1949 in which he directed, among other things, that Findlay College issue its annuity bond for

$5,000 for the benefit of Minnie R. Garner under paragraph 6 of the will, and that the bequests under paragraphs 7 and 8 of the will should be paid respectively to the Foreign Mission Board and to the Board of Missions, since the annuitant, Emma F. Garner, had died November 25, 1949. The decree also provided that the collateral inheritance tax, at the rate of $7\frac{1}{2}\%$ on the bequest under paragraph 6, should be proportioned between Minnie R. Garner and Findlay College, $\frac{3}{10}$ payable by Minnie R. Garner and $\frac{7}{10}$ by the College. The entire taxes due under paragraph 7 and 8 were directed to be paid by the Foreign Mission Board and the Board of Missions, respectively. From this decree, the executor of Alva C. Garner, Minnie R. Garner, Isabel Garner and Minnie R. Garner, administratrix of Emma F. Garner, appealed, the executor's appeal being for the benefit of the other appellants. Isabel Garner's appeal was apparently based upon the requirement that she pay a proportion of the collateral inheritance tax on the bequest made in paragraph 11, but this contention has been abandoned, and there is no question before us respecting either this bequest or the tax to be paid upon it. The only questions before us are the proper construction of paragraphs 6, 7 and 8, as there is no appeal by the parties interested in paragraphs 9 and 10. If the decree is affirmed, the appellants raise no objection to the division of the collateral inheritance tax, and the respective corporations mentioned in these paragraphs have not appealed, so that any question as to the tax will arise only if we agree with the appellants on the construction of the three paragraphs, in which case they admit that they will have to pay it all. Under these circumstances, the entire case will be disposed of by the construction placed upon these three paragraphs.

The appellants claim that, under the common law of England in force in this State, where an annuity is given in a will, the annuitant has the right to elect to take the principal sum bequeathed for the purpose of pur-

chasing such an annuity, that in the case before us Minnie R. Garner did so elect under paragraph 6, and that Minnie R. Garner, administratrix of Emma F. Garner, who died after the testator, also elected to take the principal of the annuities of her intestate, under paragraphs 7 and 8. They, therefore, contend that the account should distribute to Minnie R. Garner $5,000 under paragraph 6, and to Minnie R. Garner, administratrix of Emma F. Garner, $5,000 under paragraph 7, and $2,000 under paragraph 8.

It is provided by Article 5 of the Declaration of Rights, that the inhabitants of Maryland are entitled to the common law of England and the benefit of the English statutes existing on the fourth day of July, 1776, which by experience have been found applicable to their location and other circumstances. This section of the Declaration of Rights appeared first as Section III of the Declaration of Rights in the Constitution of 1776, as Article 3 in the Declaration of Rights of the Constitution of 1851, and as Article 4 of the Declaration of Rights in the Constitution of 1864. It was construed in the case of *State v. Buchanan,* 5 Har & J., 317, 358, 9 Am. Dec. 534, as having no reference to adjudications in England anterior to the colonization of this country, but to the common law en masse existing here either potentially or practically, as it prevailed in England on the given date, except such portions as are inconsistent with the spirit of the Constitution and the nature of our political institutions. In the concurring opinion filed by Chief Judge Chase, it is stated that whether parts of the common law are applicable because of our circumstances and situations and our general code of laws and jurisprudence, is a question which comes within the province of the courts of justice and is to be decided by them. 5 Har. & J. at page 366. This interpretation has been continuously adopted in this State, and was reaffirmed in the case of *Price v. Hitaffer,* 164 Md. 505, 510, 165 A. 470. It therefore becomes our duty to determine what

was the common law of England on July 4, 1776 with respect to the payment of annuities.

The English rule, disregarding the expressed intention of the testator, was based upon the theory that the courts would not compel an executor to perform an act which would be entirely nugatory. Some of the cases stated that when a testator directed an executor to purchase an annuity, he would be presumed to do that with the knowledge that the annuitant could claim the cash principal instead of the annuity. The theory was that if an annuity was purchased for a legatee's benefit, he could then immediately sell his annuity and get the purchase price. Accordingly it would be a useless act for the executor to buy the annuity. Annuities were purchased more frequently in England than in this country, (Williams Case, 3 Bl. 186, 228) and while we must accept the statements made by the English courts that they could there be immediately sold, it is doubtful whether that condition obtains in this country. If it does not, then the reason for the rule does not exist. We have no facts before us on this question, but we do not have to decide, in this case, whether the English law fits our circumstances and conditions, because of the conclusion we have reached that it could not apply to these particular bequests.

The earliest English case seems to have been *Barnes v. Rowley*, 3 Ves. Jr. 305, 30 Eng. Reprint, 1024, decided in 1797, where the Chancellor said "Could I have prevented her selling the annuity the next day, if it had been laid out in an annuity for her? The whole 252 pounds would have gone. The interference of the court against the will of the legatee to compel the laying out the money in an annuity for a person, her own mistress, would have been perfectly nugatory and vain. The executor can never benefit by it. I cannot raise a doubt upon it." This case has been followed for 150 years by a series of cases in the English courts. *Bayley v. Bishop*, 9 Ves. Jun. 6, 32 Eng. Rep. 501 (1803), *Palmer v. Craufurd*, 3 Swans, [482] 36 Eng. Rep. 945 (1819),

*Dawson v. Hearn,* 1 Russ. & M. 606, 39 Eng. Rep. 232 (1831) and *Ford v. Batley,* 17 Beav. 303, 51 Eng. Rep. 1051 (1853). See also additional cases referred to in *Parker v. Cobe,* 208 Mass. 260, 94 N. E. 476, 33 L. R. A., N. S., 978, 21 Ann. Cas. 1100, in the note to that case in 33 L. R. A., N. S., page 979, *In Re Maybaum's Will,* 296 N. Y. 201, 71 N. E. 2d 865, 169 A. L. R. 1357, in the annotations in 169 A. L. R., beginning on page 1360, and in Theobald, Law of Wills, Chapter XXXIX "Gifts of Annuities". Massachusetts and New York have followed the English rule, but, in New York, this was modified by statute after the decision in Re Bertuch's Will, 225 App. Div. 773, 232 N. Y. S. 36. In re Cole's Estate, 219 N. Y. 435, 114 N. E. 785, Ann. Cas. 1918E, 807, in Re Fischer's Estate, Sur., 25 N. Y. S. 2d 363. Other states have rejected it. *Feiler v. Klein,* (Ohio) App., 74 N. E. 2d 384, *Bedell v. Colby,* 94 N. H. 384, 54 A. 2d 161, In re Johnson's Estate, 238 Iowa 1221, 30 N. W. 2d 164.

Long prior to the application of this theory to annuities, it had been held by the English courts that where an executor was directed to sell specific property and turn over the proceeds to a legatee, the legatee could demand and get the property. The same rule was applied where the will directed the executor to purchase property and turn it over to a legatee. In the latter case the legatee had a right to get the money rather than the property. The early cases so holding are *Benson v. Benson,* 1 P. Wms. 130, 24 Eng. Rep. 324 (1710), *Seeley v. Jago,* 1 P. Wms. 389, 24 Eng. Rep. 438 (1717), *Attorney-General v. Weymouth,* 1 Amb. 20, 27 Eng. Rep. 11 (1743), *Seamer v. Bingham,* 3 Atk. 54, 26 Eng. Rep. 834 (1743). As we have shown, the earliest case generally relied on for the application of this principle to annuities, is *Barnes v. Rowley, supra,* decided in 1797. There is an earlier case sometimes cited, *Yates v. Compton,* 2 P. Wms. 308, 24 Eng. Rep. 743, decided in 1725. In this case, however, the annuitant was also the residuary legatee, and it seems to have chiefly involved the principle of equitable conversion. If we assume, as

most of the authorities do, that the first application to annuities was in 1797, there would be no authoritative exposition of the English common law on the subject existing in 1776. We think, however, that in any event the English rule would not be applicable in this case.

The rule is stated in Jarman on Wills, 7th Ed., Vol. 2, pp. 857, 858, in the following words: "Where the purpose of the gift is the benefit solely of the donee himself, he can claim the gift without applying it to the purpose, and that, it is conceived, whether the purpose be in terms obligatory or not. Thus, if a sum of money be bequeathed to purchase for any person a ring, or a life annuity, or a house, or to set him up in business, or towards the printing of a book, the profits on which are to be for his benefit, the legatee may claim the money without applying it, or binding himself to apply it, to the specified purpose; and even in spite of an express declaration by the testator, that he shall not be permitted to receive the money.

"These cases rest on the principle that the Court will not compel that to be done which the legatee may undo the next moment, as by selling the thing to be purchased or giving up the business; the same principle (as we have already seen) applied where the property is directed to be converted, for the donee may claim it in its original state. But, of course, if there be more than one donee interested in the gift, the deviation from the testator's directions cannot be made without the consent of all: as if the house when purchased is to be conveyed to, or settled on, two or more persons."

This rule has been much criticized because it disregards the express wish of the testator. The New York Legislature changed it to the extent of denying the right to elect to take the capital sum unless the will expressly provided for that right. Scott on Trusts, Vol. 3, paragraph 346, page 1898, states that the English courts are consistent because they have held that persons who have the entire beneficial interest in property can do as they like with it regardless of the intention of the

testator. He states, however, that it is remarkable that American courts should ever disregard the intention of the testator. See also *Feiler v. Klein, supra,* In re Johnson's Estate, *supra, Bedell v. Colby, supra,* and 41 Mich. L. R. 276.

The rule is applicable only when no one else is interested in the bequest but the annuitant. That is clear both on reason and authority. The English cases, as cited by Jarman, do not give the annuitant the right to receive cash for his annuity where there is a gift over of the residue. It has been uniformly held in such cases that to allow the annuitant to get the full sum at once deprives the residuary legatees of their property. That construction is admitted by the appellants, as specifically set out in 28 Halsbury's Laws of England, Second Ed., Sec. 348, page 191. The appellants agree that thereby Isabel Garner is prevented from receiving the principal of the bequest of an annuity provided in paragraph 11 of the will. That paragraph gives to her the interest on $3,500 to be paid to her semi-annually. The principal is to be kept in the Carroll County Savings Bank for three years, and, at the expiration of that period, it is to be paid to Findlay College as an annuity for the said Isabel during the remainder of her life, the College to pay her interest semi-annually. Should her death occur before the expiration of the three years, the principal is to be paid to the College as a bequest. Appellants, however, contend that the respective bequests to the College, the Mission Board and the Board of Missions, in paragraphs 6, 7 and 8 mean no more than that these bodies were selected by the testator because he had personal knowledge that they issued annuities. They say the purchase from them is exactly the same as if the purchase had been made from an undesignated insurance company by the executor, that these three bodies have no interest in the matter, that the paragraphs are simply offers to them to make a contract and do not affect the principle that the annuitants

are entitled to receive the cash. We are unable to agree with these contentions.

It is shown without contradiction, by the case stated in the record, that the three named institutions, in order to acquire funds for their purposes, have adopted annuity plans, under which gifts, devises and bequests are received, that the testator was familiar with them and had given money in his lifetime to some of them. They did not receive such gifts, and the testator knew they did not receive such gifts, without the expectation that they would realize something from them. The situation is quite similar to that in Re Geis' Estate, Sur. Ct., 167 Misc. 357, 3 N. Y. S. 2d 770. In that case a missionary left the residue of his estate to be invested in annuities purchased from two designated missionary societies, in whose service he had been engaged, for the benefit of his children. The Surrogate held that the societies had an interest in the bequest and refused to allow the children to receive the capital. A similar conclusion was reached in Re Benziger's Estate, (Dist. Ct. of Appeal, Cal.) 61 Cal. App. 2d 628, 143 P. 2d 717.

The wills interpreted in the English cases generally direct the executor to purchase an annuity, either by providing a definite sum for the purpose, or by providing how much a year the income is to be. In some cases there is a direction to purchase in "British funds" or in "Government securities". *Kerr v. Middlesex Hospital,* 2 D. M. & C. 576, *Ross v. Borer,* 2 J. & H. 469. In others a fixed sum is to be paid out of the income of the estate, sometimes made a charge on the freehold, or on a definite fund, or on the residue of the estate. We have been referred to no English case, nor have we found one, where there is a gift to a named corporation for the purpose of paying an annuity. The nearest cases are those where there is a direction to purchase a Government annuity, but these can hardly justify the conclusion (nor do they) that the Government has an interest in the bequest. *Davison v. Hearn,* 1 R. & M. 606, *Ford v. Bailey,* 17 B. 303. Where the testator himself picks the

charitable or religious body to which he gives a definite amount from which an annuity is to be paid to a named beneficiary for life, it would be a perversion of the rule, and of the reason behind the rule, to hold that the beneficiary can immediately get the entire corpus of the legacy. The named corporation has a clear interest in the bequest. It may be a very great interest, if the beneficiary is not long lived, or it may be only a very small one, but it is an interest nevertheless, of which it cannot be deprived by turning over the entire fund to the annuitant. It is no answer to say that this is an offer to the legatee which it may or may not accept, and that the annuitant is the object of the testator's solicitude. No legatee is bound to accept any legacy, but none of the ones in question have been refused, and the result of a refusal is not before us. The preferred beneficiary in each of the disputed paragraphs of the will we are construing may have been the annuitant, but the testator also obviously desired to give the legatees who by the terms of his will were to receive the bequests an opportunity to benefit by them. They cannot be deprived of their bequests and their rights to them, by now turning over to the annuitant the entire amounts left. This is not held in any of the English cases, would not be in accord with the English rule, and could not be based upon any reasoning which is the foundation of that rule.

The appellants agree that if the decree below should stand, the direction as to the division of the collateral tax should also be affirmed. There has been no appeal from this ruling on behalf of the appellees, and, therefore, the entire decree will be affirmed.

*Decree affirmed. Costs to be paid out of the estate.*