# STATE OF MARYLAND *v.* JAMES EDWARD WARD

[No. 66, September Term, 1978.]

*Decided December 21, 1978.*

190

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Richard P. Arnold, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*James P. Salmon,* with whom was *Hal C. B. Clagett, III* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

With the common law of England, to which the inhabitants of Maryland are constitutionally entitled, Md. Const., Dec. of Rights, Art. 5, came the doctrine of accessoryship applicable to felonies. Although the common law may be changed by legislative act [1] or judicial decision,[2] the doctrine has not been altered in this jurisdiction. Maryland is one of the few, if not the only state, which has retained this doctrine in virtually the same form as it existed at the time of William Blackstone in the 18th century, and it represents the law of Maryland at the present time.[3] *State v. Williamson,* 282 Md. 100, 111, 382 A. 2d 588 (1978) (concurring opinion by Levine, J.).

---

1. Md. Const., Declaration of Rights, Art. 5 expressly so provides. *See* State v. Canova, 278 Md. 483, 486, 365 A. 2d 988 (1976); Lutz v. State, 167 Md. 12, 15, 172 A. 354 (1934); Harrison v. State, 22 Md. 468, 487-488 (1864).

2. Ass'n of Taxi Oprs. v. Yellow Cab Co., 198 Md. 181, 204, 82 A. 2d 106 (1951); Gilbert v. Findlay College, 195 Md. 508, 513, 74 A. 2d 36 (1950); Price v. Hitaffer, 164 Md. 505, 510, 165 A. 470 (1933); State v. Buchanan, 5 H. & J. 317, 365-366 (1821) (concurring opinion of Chase, C. J.).

3. Every American jurisdiction except Maryland has legislated on the subject. Most states have expressly abrogated the distinction between principals and accessories before the fact, treating all such offenders as principals, or else have reached substantially the same result by providing that those who would have been accessories before the fact may be prosecuted, tried and punished as if they were principals. *See* Model Penal Code § 2.04, Appendix (Tent. Draft No. 1, 1953); W. La Fave & A. Scott, Handbook on Criminal Law § 63, p. 500 (1972). England, the birthplace of the common law rules, pioneered their curtailment as early as 1861. The Accessories and Abettors Act, 1861, 24 & 25 Vict. c. 94. *See* State v. Williamson, 282 Md. 100, 111, n. 2, 382 A. 2d 588 (1978).

The decision in *Williamson* was based on a narrow ground, and the majority of the Court found that it was unnecessary to reach the pivotal question certified for review: whether Maryland should abandon the ancient common law distinction between principals and accessories before the fact. *Id.* at 110. The question was not raised in the case at hand, and remains open.

Accompanying the common law doctrine across the Atlantic were certain highly technical procedural rules, not altogether logical, which had developed from the distinction between principals and accessories before the fact. These rules operate to the advantage of the accused and the detriment of the prosecution, for they "tended to shield accessories from punishment notwithstanding overwhelming evidence of their criminal assistance." W. La Fave & A. Scott, Handbook on Criminal Law § 63, pp. 498-499 (hereinafter referred to as La Fave & Scott). The rules are frequently procedural embarrassments to the State, see *State v. Magliano,* 7 Md. App. 286, 255 A. 2d 470 (1969), and the case at hand furnishes yet another example. It concerns the application of the common law doctrine of accessoryship to the crime of murder, and the procedural embarrassments to the State are compounded by the statutory classification in Maryland of murder into degrees, which was unknown at the English common law.

## I

The ultimate question on this appeal is whether the Circuit Court for Prince George's County erred in dismissing an indictment returned against James Edward Ward.[4] Harry Edward Brockman and David Victor Maness were charged with the premeditated murder of Gerald Joseph Godbout, Jr. on 28 April 1972, and were tried in the Circuit Court for Prince George's County. Each pleaded guilty to and was convicted of the murder in the second degree under a plea bargain arrangement.[5] Maryland Rule 731 e, formerly Rule 724. On

---

4. The State appealed to the Court of Special Appeals. We issued a writ of certiorari on our own motion before decision by that court. Maryland Code (1974, 1978 Cum. Supp.) § 12-201 of the Courts and Judicial Proceedings Article.

5. The plea and conviction of Brockman were not easily attained. The State disavowed its bargain with Brockman and insisted on trying him for murder in the first degree. After a mistrial, he was found guilty of murder in the first degree and two handgun offenses and sentenced to life imprisonment plus eight years. On appeal, the Court of Special Appeals vacated the judgments and remanded the case to the trial court, directing that he be permitted to elect between the result of his trial and enforcement of the agreement. Brockman v. State, 27 Md. App. 682, 694, 341 A. 2d 849 (1975). We granted certiorari and affirmed the judgment of the intermediate

17 July 1974 Ward was indicted for various offenses relating to the murder. At the time of the dismissal of the indictment on 11 April 1978, only the third count remained.[6] It charged Ward as an accessory before the fact of the murder of Godbout, alleged to have been committed by Brockman and Maness "feloniously, wilfully and of their deliberately premeditated malice aforethought." It presented that Ward "did unlawfully aid, counsel and procure the said ... Brockman and ... Maness to do and commit the said murder. ..."

The indictment was dismissed upon the grant of a motion filed by Ward claiming that the third count was defective. In light of the allegations in the motion, the arguments made regarding them, and the comments of the court, these questions are presented which go to the determination of

---

court. State v. Brockman, 277 Md. 687, 692, 357 A. 2d 376 (1976). Not surprisingly, Brockman elected to enforce the plea bargain agreement.

"Plea bargaining is not of recent vintage. It appears to have originated in seventeenth century England as a means of mitigating unduly harsh punishments." State v. Brockman at 692, n. 2. Other procedural niceties have developed for like reason, including the distinction between principals and accessories. La Fave & Scott § 63, p. 499.

6. The indictment as returned contained five counts presenting that Ward had committed offenses on or about 28 April 1972 relating to the murder of Godbout and the attempted murder of Dorothy Mae Ward. The first and second counts charged him with conspiring with Brockman, Maness and Jesse Stephens to murder, respectively, Dorothy Mae Ward and Godbout. The fourth count alleged that he "did attempt to unlawfully, wilfully and of his deliberately premeditated malice aforethought murder Dorothy Mae Ward. ..." The fifth count asserted that he "feloniously, wilfully and of his deliberately premeditated malice aforethought, did murder [Godbout]. ..." Tried before a jury, a nolle prosequi was entered as to the fourth and fifth counts, and he was found guilty under the first, second and third counts on 6 February 1975. A term of life imprisonment was imposed on each conviction, the sentences to run concurrently. The judgments were affirmed on direct appeal, Ward v. State, 30 Md. App. 113, 351 A. 2d 452, *cert. denied,* 277 Md. 742 (1976).

Ward collaterally attacked the judgments under post conviction procedures. He claimed that he had been denied effective representation of counsel because his attorney had failed to move for dismissal of the conspiracy charges on the ground that they were barred by limitations. He sought dismissal of the first and second counts of the indictment, and a new trial on the third count. He prevailed in the Circuit Court for Prince George's County, and in the Court of Special Appeals, which affirmed the post conviction court's judgment upon grant of the State's application for leave to appeal. State v. Ward, No. 1359, September Term, 1976, unreported, decided 29 September 1977.

whether the court erred in dismissing the indictment as defective:

1) May there be an accessory before the fact of murder in the second degree?

2) If so, did the form of the third count permit Ward to be tried as an accessory before the fact of murder in the second degree?

3) In any event, may Ward be guilty of murder in the first degree as accessory before the fact when his principals stand convicted of murder in the second degree?

## II

We lay a foundation for our determination of whether the court erred in dismissing the indictment by examining the relevant terms involved.

### Murder

Homicide is the killing of a human being by a human being. It is culpable when it is felonious, and it is felonious when it is not justifiable or excusable. *See* Clark & Marshall, A Treatise on the Law of Crimes §§ 10.00-10.14 (7th ed. 1967) (hereinafter referred to as Clark & Marshall); L. Hochheimer, Crimes and Criminal Procedure §§ 656-678 (1st ed. 1897) (hereinafter referred to as Hochheimer); R. Perkins, Criminal Law 28-96 (2d ed. 1969) (hereinafter referred to as Perkins).

"In the English common law there was but one crime of felonious homicide (if petit treason is ignored).[7] The division of this into murder and manslaughter resulted from early statutes intended to exclude the

7. "Petit Treason" was used for the felonious homicide of master by servant, husband by wife, and prelate by clerk. 3 E. Coke, Institutes *19-20. *See* Md. Code (1957, 1971 Repl. Vol.) art. 27, § 412, providing that "every person liable to be prosecuted for petit treason shall in future be indicted, proceeded against and punished as is directed in other kinds of murder, according to the degree." This provision for the prosecution of petit treason was repealed by Acts 1978, ch. 3, the title of which expressly stated that it was "AN ACT ... FOR the purpose of repealing ... provisions concerning ... the prosecution for petit treason...."

more heinous types of homicide from benefit of
clergy. In its origin this was merely a difference in
penalty dependent upon the presence or absence of
aggravating circumstances, and no doubt it would
have been worded in terms of 'degrees' of the crime
if that concept had been in use at the time. For most
purposes murder and manslaughter have come to be
regarded as distinct offenses. . . ." Perkins, *Parties
to Crime,* 89 U. Pa. L. Rev. 581, 587 (1941).

In Maryland, murder and manslaughter are not considered
as degrees of felonious homicide, but are regarded as dis-
tinct offenses, distinguished by the presence of malice
aforethought in murder and the absence of malice in
manslaughter. *Davis v. State,* 39 Md. 355 (1874); *Weighorst
v. State,* 7 Md. 442 (1855).[8]

At the common law there were no degrees of murder. A
conviction of felonious homicide with malice aforethought,
that is, murder, called for the sentence of death and was
excluded from the benefit of clergy.[9] The penalty of death for
all acts of murder long ago came to be thought too severe
because of the widely different circumstances and varying
atrociousness under which one person may feloniously kill
another. Ameliorative measures were taken in many states
through legislative enactments, generally by dividing murder

---

**8.** Blackstone put the definition of murder this way, quoting Sir Edward
Coke, 3 Inst. *47: " '[W]hen a person of sound memory and discretion,
unlawfully killeth any reasonable creature in being, and under the king's
peace, with malice aforethought, either express or implied.' " 4 W.
Blackstone, Commentaries *195. Blackstone defined manslaughter as "the
unlawful killing of another without malice, either express or implied: which
may be either voluntarily, upon a sudden heat, or involuntarily, but in the
commission of some unlawful act." *Id.* at *191.

**9.** *See* 12 Hen. VII, c. 7 (1496); 4 Hen. VIII, c. 2 (1512); 23 Hen. VIII, c.
1, §§ 3, 4 (1531); 1 Edw. VI, c. 12, § 10 (1547). "Nominally only members of
the clergy were entitled to benefit of clergy; but the courts extended it to
include every man who could read, on the fiction that if he could read he must
be a member of the clergy." R. Perkins, Criminal Law 87, n. 8 (2d ed. 1969),
citing 3 Stephens, History of the Criminal Law of England 44 (1883).

In Maryland, all claims to dispensation from punishment by benefit of
clergy were forever abolished. Acts 1737, ch. 2; Md. Code (1957, 1976 Repl.
Vol.) art. 27, § 626.

into degrees and relating the punishment to the degree.[10] Maryland followed this pattern. Acts 1809, ch. 138, § 3. The preamble to § 3 expressed its object:

> "*And* whereas the several offences which are included under the general denomination of murder, differ so greatly from each other in the degree of their atrociousness, that it is unjust to involve them in the same punishment. . . ." [11]

As presently codified, the statute declares that "[a]ll murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree," Maryland Code (1957, 1976 Repl. Vol.) art. 27, § 407,[12] and "[a]ll other kinds of murder shall be deemed murder in the second degree," *id.* § 411.

### Principals and Accessories

"In the field of felony the common law divided guilty parties into principals and accessories." Perkins at 643. Principals came to be classified as in the first degree (perpetrators) or in the second degree (abettors) and accessories as before the fact (inciters) or after the fact (criminal protectors).[13]

---

10. Pennsylvania, the first state to pass such a statute, enacted the legislation on 22 April 1794, with housekeeping amendments in 1860. 18 Pur. Pa. Stat. Ann. (1945), c. 11, § 4701.

11. Acts 1809, ch. 138, § 4 prescribed death, by hanging by the neck, for murder in the first degree, subsection 1st; imprisonment for not less than five nor more than eighteen years for murder in the second degree, subsection 2d; and imprisonment for not more than ten years for manslaughter, subsection 3d. For the penalties in effect as of 1 July 1978, *see* Maryland Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) art. 27, §§ 412 (first degree murder and second degree murder) and 387 (manslaughter).

12. Murder committed in the perpetration of certain other acts is also designated to be murder in the first degree by legislative enactment. *See,* for example, Maryland Code (1957, 1976 Repl. Vol.) art. 27, §§ 408, 409 and 410.

13. "According to the ancient analysis only the actual perpetrator of the felonious deed was a principal. Other guilty parties were called 'accessories', and to distinguish among these with reference to time and place they were divided into three classes: (1) accessories before the fact, (2) accessories at the fact, and (3) accessories after the fact. At a relatively early time the party who was originally considered an accessory at the fact ceased to be classed in the

A *principal in the first degree* is one who actually commits a crime, either by his own hand, or by an inanimate agency, or by an innocent human agent. A *principal in the second degree* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive. An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration. An *accessory after the fact* is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment. *See State v. Williamson,* 282 Md. 103-105; *Camphor v. State,* 233 Md. 203, 205, 196 A. 2d 75 (1963); *Thornton v. State,* 232 Md. 542, 544, 194 A. 2d 617 (1963); *Veney v. State,* 225 Md. 237, 238, 170 A. 2d 171 (1961); *Davis v. State,* 38 Md. 15, 45 (1873); *Agresti v. State,* 2 Md. App. 278, 280, 234 A. 2d 284 (1967); 4 W. Blackstone, Commentaries \*34-38 (hereinafter referred to as Blackstone); Clark & Marshall §§ 8.01-8.03, 8.06; Hochheimer §§ 31-36; Perkins at 643-669. For a neat summary of the common law of parties as applied to felonious homicide, *see State v. Powell,* 168 N. C. 134, 138, 83 S. E. 310 (1914).

## III

### (1)

We receive little assistance from the common law in considering whether there may be an accessory before the

---

accessorial group and was labeled a principal. To distinguish him from the actual perpetrator of the crime he was called a principal in the second degree. Thereafter, in felony cases there were two kinds of principals, first degree and second degree, and two kinds of accessories, before the fact and after the fact." Perkins, Criminal Law 643 (2d ed. 1969).

"There is some authority for using the word 'accomplice' to include all principals and all accessories, but the preferred usage is to include all principals and accessories before the fact, but to exclude accessories after the fact." *Id.* at 648.

We are not concerned here with accessories after the fact and do no more than note, without further discussion, the definition of such a party.

fact of second degree murder because, as we have indicated, murder was not divided into degrees at the common law. Blackstone asserts in his discussion of what offenses admit of accessories: "In murder and other felonies, there may be accessories: except only in those offences, which by judgment of the law are sudden and unpremeditated, as manslaughter and the like; which therefore cannot have any accessories *before* the fact." Blackstone *36. Commentators reject this exception. Perkins characterizes it as "a far-fetched corollary" to the rule that an accessory cannot be tried before his principal. Perkins at 673. 1 F. Wharton, Criminal Law § 680, p. 908 (12th ed. 1932) (hereinafter referred to as Wharton) states flatly: "A person may be legally convicted as accessory before the fact of murder in the second degree." 1 R. Anderson, Wharton's Criminal Law and Procedure § 111, p. 241 (1957) (hereinafter referred to as Anderson) asserts: "There may be accessories before the fact to the crime of murder in different degrees." This view is thus explained in Wharton:

> "It has been doubted whether there can be an accessory before the fact to manslaughter, since accessoryship presupposes premeditation, and premeditation is incompatible with manslaughter. But . . . an instigator may, in hot blood, stimulate a person incensed with another to execute a deed of vengeance on such other, when the offense of the perpetrator would be only manslaughter; and we may also hold that an instigator may be guilty of murder in instigating another to commit manslaughter by the rash use of dangerous instrumentalities. *A fortiori* there may be an accessory before the fact to murder in the second degree." *Id.* § 272, pp. 361-362 (footnotes omitted).

*See* G. Williams, Criminal Law § 130 (2nd ed. 1961) (hereinafter referred to as Williams).

The General Assembly has recognized accessoryship of murder in the second degree at least to the extent of providing for punishment upon conviction thereof, but

without distinction between accessories before and after the fact:

> "Every person convicted of the crime of murder in the second degree, *or as accessory thereto,* shall be sentenced to the penitentiary for not more than thirty years." Code (1957, 1976 Repl. Vol.) art. 27, § 414 (emphasis added).[14]

The view that there may be an accessory before the fact of murder in the second degree has a rational basis. A person may be guilty of "[c]onduct ... accompanied by an intent to do serious bodily injury but without an intent to kill, which legally causes another's death." La Fave and Scott, 540. We recognized that such conduct constitutes murder in *Davis v. State,* 237 Md. 97, 104, 205 A. 2d 254 (1964), *cert. denied,* 382 U. S. 945 (1965): "An actual intent to take life is not necessary for a conviction of murder if the intent is to commit grievous bodily harm and death occurred in consequence of the attack." This "intent-to-do-serious-bodily-injury murder" has been traced back to *Holloway's Case,* 79 Eng. Rep. 715 (K.B. 1628). The murder in such circumstances is in the second degree. "If the intent were to commit grievous bodily harm, and death occurred in consequence of the attack, then the case would have been murder in the second degree...." Wharton § 841, pp. 1131-1132. The felonious homicide would be with malice aforethought but not wilful, deliberate and premeditated. *See Gladden v. State,* 273 Md. 383, 387, 330 A. 2d 176 (1974). So, if A shoots B in the leg with the intention of doing him serious bodily harm short of death but the injury thereby done to B results in the death of B, however contrary this may be to A's intention, A is guilty of murder in the second degree. If C, sharing A's intention that B be seriously injured but not killed, aided, counseled, commanded or encouraged the shooting, without having been present either

---

14. By Acts 1809, ch. 138, § 4, subsection 2, the penalty for "[e]very person duly convicted of the crime of murder in the second degree, or as accessory thereto," was imprisonment "for a period not less than five nor more than eighteen years...." Acts 1966, ch. 339, § 1 increased the term to not less than thirty years. *See* footnote 19, *infra,* and Part V of this opinion.

The General Assembly has not provided a penalty for accessories of manslaughter. *See* Md. Code (1957, 1976 Repl. Vol.) art. 27, § 387.

actually or constructively at the moment of perpetration, he would be guilty as an accessory before the fact to murder in the second degree.

We conclude that there may be an accessory before the fact of murder in the second degree.

### (2)

Having concluded that there may be an accessory before the fact of murder in the second degree, we find that Ward could be tried therefor under the third count of the indictment.

The statute classifying murder into degrees did not require a change in the common law forms of charging the offense. *Wood v. State,* 191 Md. 658, 667, 62 A. 2d 576 (1948). However, the General Assembly of Maryland relaxed the formal common law requirements of indictment in homicide cases when it enacted Chapter 248 of the Acts of 1906. It authorized the use of a shortened statutory form which may, but need not, be used in lieu of the common law forms. Although there were subsequent amendments to the form because of controversies relative to the death penalty, the only actual change in the formula authorized to be used in an indictment was the requirement added by § 7 of Acts 1963, ch. 558 that an indictment conclude with the words "against the peace, government and dignity of the State." *State v. Williamson,* 282 Md. at 109. The validity of the 1906 formula has been upheld by this Court. *Kelley v. State,* 181 Md. 642, 647, 31 A. 2d 614 (1943); *Neusbaum v. State,* 156 Md. 149, 161-162, 143 A. 872 (1928).

The *murder* of which Ward was alleged to have been an accessory before the fact was charged in the third count of the indictment pursuant to the statutory formula, which, we observe, is expressly applicable, not only to murder and manslaughter, but "for being accessory thereto." It is well settled that under an indictment pursuant to the statutory formula, even though it spells out murder in the first degree, the accused may be convicted of murder in the first degree, of murder in the second degree, or of manslaughter.

*Blackwell v. State,* 278 Md. 466, 476, 365 A. 2d 545 (1976), *cert. denied,* 431 U. S. 918 (1977); *State v. Evans,* 278 Md. 197, 199, n. 1, 362 A. 2d 629 (1976); *Carroll v. Warden,* 205 Md. 631, 632-633, 106 A. 2d 71 (1954). This is not out of line with the common law, which never entirely lost sight of the notion that the crime is felonious homicide, of which murder and manslaughter are but different grades. Perkins at 649. Thus, it was said in 1 Hale P. C. *348:

> "Upon an indictment of murder, tho the party upon his trial be acquit of the murder, and convict of manslaughter, he shall receive judgment, as if the indictment had been manslaughter, for the offense in substance is the same."

We find that, under the third count of the indictment, Ward could be tried as an accessory before the fact of murder in the second degree.

### (3)

We consider now whether a person may be convicted of murder in the first degree as accessory when his principal has been convicted of the murder in the second degree.

At the common law the principal in the second degree may be tried and convicted prior to the trial of the principal in the first degree, or even after the latter has been tried and acquitted. 1 Hale P. C. *437. Furthermore, a principal in the second degree may be convicted of a higher crime or a lower crime than the principal in the first degree. Clark & Marshall § 8.05, p. 521; Perkins at 670-671.[15] With respect to accessories, however, the common law took a different path. An accessory cannot be tried, without his consent, before the

---

15. Perkins gives examples. "[The principal in the second degree] may be convicted of first-degree murder, for example, although the [principal in the first degree] has been convicted of second-degree murder. Similarly, the former may be convicted of murder although the latter has been convicted of manslaughter, since an abettor may counsel with malice aforethought what the other perpetrates in the sudden heat of passion. An abettor may be convicted of felony even though the perpetrator has been convicted of misdemeanor only. Needless to say, the abettor may be convicted of a lower degree of crime than the perpetrator." Id. at 671 (footnotes omitted).

principal.[16] *State v. Williamson,* 282 Md. at 112 (concurring opinion by Levine, J.); Clark & Marshall § 8.05, p. 523; Perkins at 672-673. And an accessory could not be convicted of a higher crime than his principal. Blackstone declares flatly:

> "It is a maxim, that *accessorius sequitur naturam sui principalis*: and therefore an accessory cannot be guilty of a higher crime than his principal; being only punished as a partaker of his guilt." Blackstone at \*36.

*See* Clark & Marshall § 8.03, p. 514; Hochheimer § 38; Perkins at 675; Wharton § 276. The rule that an accessory before the fact may not be convicted of a higher crime than the principal has not been altered by statute or judicial decision in Maryland and is the law of this State at the present time.

In arguing to the trial court that a person could be convicted of murder in the first degree as an accessory, although the principal has been convicted of that murder in the second degree, the State declared that "Wharton says we can do it." [17] We think that the State misinterpreted Wharton. It is correct that Wharton says:

> "The instigator may act in hot blood, in which case he will be guilty only of manslaughter, while the

---

16. Even when the accessory waives the right, and may be tried before the principal, if he is convicted it is necessary to respite judgment until the trial of the principal because a subsequent acquittal of the latter would annul this conviction. 1 Hale P.C. \*623.

The principal and the accessory may be tried jointly, unless the accessory is entitled to a severance, but if they are tried together the trier of fact must first inquire into the guilt of the principal, and, if it finds him not guilty, the accessory must be acquitted. Only upon finding the principal guilty may the trier of fact consider whether the accessory is guilty. An acquittal of the principal, of course, bars a subsequent trial of the accessory. Perkins at 672-673. Professor Perkins finds this aspect of the principal-accessory concept to be "quite absurd." He points out: "Anything which prevents conviction of the principal makes impossible the conviction of the accessory. Hence, if the principal is never apprehended, or if before the moment of conviction he should die or be pardoned, the accessory must go free although his guilt may be well known and easy to prove. Furthermore, if both are convicted in due course, but the conviction of the principal is thereafter reversed, the conviction of the accessory cannot stand." *Id.* at 673.

17. The trial court was not persuaded to accept Wharton's notion. It observed: "I have a little trouble with Mr. Wharton this morning."

perpetrator may act coolly, and thus be guilty of murder. The converse, also, may be true: the instigation may be cool and deliberate, the execution in hot blood by a person whom the instigator finds in a condition of unreasoning frenzy. A person desiring coolly to get rid of an enemy, for instance, may employ as a tool someone whom that enemy has aggrieved, and who is infuriated by his grievance. Hence an accessory before the fact (or, to adopt the terms of recent codes, an instigator) may be guilty of murder, while the principal (or perpetrator) may be guilty of manslaughter; or the accessory before the fact (instigator), acting in hot blood, may be guilty of manslaughter, while the perpetrator (principal), acting with deliberate malice, may be guilty of murder." Wharton § 276, pp. 363-364.

Immediately preceding this statement, however, is a recognition of the common law rule and a qualification regarding the view expressed:

"Under the old law, the defendant was first convicted, and then the accessory was charged with being accessory to the offense which the conviction covered. *But now that instigation is a substantive offense,* it must be remembered that the offense of the instigator is not necessarily of the same grade as that of the perpetrator." *Id.* § 276, p. 363 (emphasis added).

Before us the State also quotes Williams § 130, pp. 390-391. Professor Williams refers to the rule that a principal in the first degree may be convicted of murder and a principal in the second degree of manslaughter, and asserts: "There is no reason why a similar result should not be reached for accessories before." *Id.* § 130, p. 390 (§ 62, p. 210 (1st ed. 1953)). He gives examples whereby an accessory before the fact could be guilty of manslaughter and the principal of murder, and the converse where the guilt of the secondary party is the greater. He concludes: "To put the matter generally, a secondary party can be convicted of a crime of

a higher degree than the principal." *Id.* § 130, p. 391 (§ 62, p. 211 (1st ed. 1953)). But he relies heavily on Wharton, and we are constrained to conclude that his view, like that of Wharton, depends upon the status of the law whereby accessoryship before the fact has been made a substantive offense by statute.

Accessoryship before the fact was not a substantive offense under common law, and there being neither statute nor judicial decision in this jurisdiction making it so, it is not a substantive offense in Maryland. The common law theory of parties was based upon the concept of one crime with guilt attaching to several persons. The application of this theory to murder was well expressed in *State v. Ayers,* 67 Tenn. 96 (1874):

> "The offense is compounded of the connivance of the accessory and the actual killing by the principal felon, and the crime of the accessory, thought inchoate in the act of counseling, hiring or commanding, is not consummate until the deed is actually done. The law in such case, holds the accessory before the fact to be guilty of the murder itself, not as principal, it is true, but as accessory before the fact, for it is the doing of the deed, and not the counseling, hiring, or commanding that makes his crime complete; and it is for the murder that he is indicted, and not for the counseling and procuring." *Id.* at 100.

Thus it is that Hale spoke of "an accessory to murder before the fact," 1 Hale P.C. *435, rather than "an accessory before the fact to the crime of murder," or some similar form, as is used under modern statutes which make accessoryship before the fact a separate substantive offense. Perkins at 649. What we perceive to be the basis of the view of Wharton and Williams that an accessory before the fact may be convicted of a higher crime than that of which the principal was convicted simply does not exist in Maryland. There may be no reason why the rule with respect to principals in the first degree and principals in the second degree should not be

extended to accessories before, as Williams stated, but the plain fact is that Maryland has not yet done so.

The classification of murder into degrees left intact the common law concept of murder as one crime:

> "'Murder' is here recognized as a general denomination, including offenses differing from each other in their degrees of atrocity, but not in their nature or kind; no attempt is made to explain or modify its meaning or abridge its range. Its common law sense is left unimpaired; the measure of punishment only is sought to be graduated according to the circumstances under which it was committed." *Davis v. State,* 39 Md. at 374.[18]

*See Gladden v. State,* 273 Md. at 389-390; *Stansbury v. State,* 218 Md. 255, 260, 146 A. 2d 17 (1958); *Wood v. State,* 191 Md. at 666; *Abbott v. State,* 188 Md. 310, 312, 52 A. 2d 489 (1947); *Hanon v. State,* 63 Md. 123, 126 (1885). At first blush, it would seem that since murder is one crime, the rule that an accessory before the fact may not be convicted of a higher crime than his principal would be satisfied when both were convicted of murder, regardless of the degree. But the rule was based on the notion that an accessory should never suffer more punishment than the principal. Perkins at 675. And at the common law, principals and accessories were equally culpable and subject to the same punishment. *State v. Williamson,* 282 Md. at 106; *Agresti v. State,* 2 Md. App. at 281; 1 J. Chitty, A Practical Treatise on the Criminal Law *267 (1819). Clark & Marshall states: "At common law an accessory before the fact is liable to the same punishment as the principal." *Id.* § 8.05, p. 522. In Maryland, at the time Ward was alleged to have committed the murder as an

---

18. We observed in *Davis* at 373:

> "The essential elements of all felonies at common law, such as murder, arson and robbery, have been ascertained and defined by innumerable decisions, and are expressed with legal certainty by certain technical terms, which have been engrafted upon our jurisprudence for centuries.

> "These terms are incorporated into our language as expressing 'per se' the crime they designate, and when used in our statutes have a legal meaning when not otherwise qualified."

accessory before the fact, the punishment prescribed by statute for "[e]very person convicted of murder in the first degree, his or her aiders, abettors and counsellers," was death or life imprisonment, in the discretion of the court, except that when a jury in rendering a verdict of murder in the first degree added the words "without capital punishment," the sentence was to be life imprisonment. Code (1957, 1971 Repl. Vol.) art. 27, § 413.[19] As we have seen, the punishment upon conviction of murder in the second degree and of being an accessory thereto, was not more than thirty years. Therefore, to be faithful to the rationale of the rule at common law, it must be construed in light of present day circumstances to apply to *degrees* of murder, so that an accessory before the fact may not be convicted of a higher *degree* of murder than the principal committing that murder. In the case *sub judice,* the principals stood validly convicted of murder in the second degree, and Ward may not be convicted of murder in the first degree as an accessory.[20]

---

19. In Bartholomey v. State, 267 Md. 175, 297 A. 2d 696 (1972) we held, in view of the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U. S. 238, 92 S. Ct. 2726 (1972), that the death penalty authorized by the statute was unconstitutional. The General Assembly enacted Acts 1975, ch. 252, and Acts 1976, ch. 595, amending § 413 of art. 27, in an attempt to remedy the constitutional deficiencies in the death penalty provision. We held that the new death penalty provisions under it were also unconstitutional in light of six cases decided by the Supreme Court in July 1976 — Gregg v. Georgia, 428 U. S. 153, 96 S. Ct. 2909; Jurek v. Texas, 428 U. S. 262, 96 S. Ct. 2950; Proffitt v. Florida, 428 U. S. 242, 96 S. Ct. 2960, upholding death penalty statutes; and Woodson v. North Carolina, 428 U. S. 280, 96 S. Ct. 2978; Roberts v. Louisiana, 428 U. S. 325, 96 S. Ct. 3001; Green v. Oklahoma, mem., 428 U. S. 907, 96 S. Ct. 3216, striking down death penalty statutes as unconstitutional. Blackwell v. State, 278 Md. at 473. The General Assembly again enacted legislation in an attempt to obtain a constitutional death penalty. Acts 1978, ch. 3, §§ 1, 2; Code (1957, 1976 Repl. Vol., 1978 Cum. Supp.) art. 27, §§ 412-414. The constitutionality *vel non* of the 1978 Act has not been reviewed as yet by an appellate court.

The 1975 statute prescribed that "[e]very person convicted of aiding, abetting, or counselling the commission of any murder [for which life imprisonment or death was authorized] shall be sentenced to life imprisonment." Code, art. 27, § 413 (c). The 1978 Act repealed former § 412, § 413 and § 414, the last authorizing a penalty upon conviction of murder in the second degree or "as accessory thereto." Subsection (b) of new § 412 designates the punishment for murder in the first degree and subsection (c) designates punishment for murder in the second degree. We observe that no penalty is provided under the new statute for being an accessory to either murder in the first degree or murder in the second degree. But *see* Part V of this opinion.

20. It is immaterial why the verdicts were rendered if otherwise validly reached. For example, whether they were the result of a plea bargain

Otherwise he would not be equally culpable with the principals and would be liable to greater punishment than that to which they were subjected.

## IV

We have found that there may be an accessory before the fact of murder in the second degree, that the third count of the indictment permitted Ward to be convicted of murder in the second degree as an accessory before the fact, but that, as a matter of law, Ward may not be convicted of murder in the first degree as an accessory before the fact. It follows from these findings that the indictment before the court was not defective. Ordinarily, Ward could be properly tried under it, and the court would err in dismissing it. Upon trial under the count, however, Ward would be entitled as a matter of law to a judgment of acquittal of murder in the first degree as accessory.

This case takes still another turn, however, because the procedural questions arising from the common law doctrine of accessoryship were compounded by comments made by the prosecutor at trial. During the argument before the trial court on the motion to dismiss the indictment as defective, the court took the position that the indictment charged Ward only with being an accessory before the fact to murder in the first degree. It said:

> "My point is you have charged him with a specific crime of accessory before the fact of premeditated murder and you don't have principals to premeditated murder so you can't convict him of accessory before the fact of premeditated murder."

The State countered by claiming that it was not necessary to have principals convicted of murder in the first degree to try a person as an accessory before the fact to murder in the first degree. The State apparently agreed with the contention of

---

arrangement, as here, or whether they appeared to be a compromise verdict of a jury would not affect the application of the rule. *Cf.* Isaacs v. State, 31 Md. App. 604, 618-619, 358 A. 2d 273, *cert. denied,* 278 Md. 724 (1976).

the defense that there could not be accessoryship before the fact to murder in the second degree — "it doesn't make sense." Whereupon the court asked: "Then how can you try somebody on the indictment . . . for accessory before the fact of a second degree murder, which is what you want to do?" The transcript of the proceedings reads:

> "MR. ARNOLD [Assistant State's Attorney]: No, it isn't. We are trying him for accessory before the fact of first degree murder, and Wharton says we can do it.
>
> "THE COURT: Even though there is no conviction of first degree murder?
>
> "MR. ARNOLD: That's correct. That answers it specifically."

As we have indicated, the State misinterpreted Wharton, and we have concluded that as a matter of law, he could not be tried for murder in the first degree as an accessory. The question is, however, whether, by reason of this expression of how it planned to proceed, the State is also precluded from trying Ward for murder in the second degree as an accessory. We do not think that it is. It is clear that in ruling on the motion the court did not subscribe to the State's view and did not rely on the State's statement of what it intended to prove in reaching its decision. Ward was in no way misled. We now have established precise procedures for the entry of a nolle prosequi by our Rules of Procedure. Rule 782, formerly Rule 711. "A defendant may enter a plea of not guilty to one degree and a plea of guilty to another degree of an offense which, by law, may be divided into degrees of guilt." Rule 731 e, formerly Rule 724, and, likewise, a nolle prosequi may be entered to a degree of an offense. *See* Hochheimer § 209. In the circumstances, we do not deem the State's statement made during argument to amount to the entering of a nolle prosequi to murder in the second degree as an accessory. *Compare Knotts v. State,* 237 Md. 417, 207 A. 2d 100 (1965); *Williams v. State,* 7 Md. App. 241, 254 A. 2d 376 (1969), *cert. denied,* 256 Md. 749 (1970); *Stocker v. State,* 4 Md. App. 275,

242 A. 2d 588 (1968), *cert. denied,* 251 Md. 752, *cert. denied,* 395 U. S. 982 (1969).

In short, we believe that, in the unique situation in which the State was placed by the procedural embarrassments emanating from the common law doctrine of accessoryship, the position it indicated in arguing the motion to dismiss the indictment should be treated as no more than a statement of how it thought it would proceed at trial if it prevailed in its argument that the motion to dismiss the indictment be denied, rather than an absolute "abandonment" of attempting to prove under the indictment that Ward was guilty of murder in the second degree as an accessory before the fact. In the interests of justice, the State should not be precluded at a trial of Ward under the third count of the indictment from attempting to establish that he was guilty of the murder of Godbout in the second degree as an accessory before the fact.

We reverse the judgment of the trial court and remand the case for trial under the third count of the indictment. At the trial, Ward shall be entitled, as a matter of law, to a judgment of acquittal as to murder in the first degree as accessory before the fact.

## V

The remand of the case for trial of Ward under the third count of the indictment for murder in the second degree as accessory before the fact requires further comment. Acts 1978, ch. 3, §§ 1, 2 repealed former §§ 412, 413 and 414 of art. 27 and enacted new sections in lieu thereof. *See* footnote 19, *supra.* Former § 414, as we have indicated, provided that "[e]very person convicted of the crime of murder in the second degree, or as accessory thereto, shall be sentenced to [imprisonment] for not more than thirty years." The new § 412 (c) provides: "A person found guilty of murder in the second degree shall be sentenced to imprisonment for not more than 30 years." Unlike the former statute, nothing is said about accessoryship to murder in the second degree. We have seen, however, that in Maryland accessoryship before the fact is not a substantive offense. A person need not be

specifically charged as an accessory before the fact; he may be charged pursuant to the statutory formula with the murder and be convicted thereunder as accessory thereto upon evidence so showing. *State v. Williamson,* 282 Md. at 110.[21] As an accessory before the fact he is punished as a partaker of the guilt of the principal and is liable to the same punishment as the principal. Therefore, the absence of the phrase "or as accessory thereto" in the statute prescribing the punishment for second degree murder is of no moment; it does not result in a crime without a penalty. *See* Perkins at p. 7. The phrase was mere surplusage in the former law, and under the new statute, as under the old, a person convicted of murder in the second degree as an accessory before the fact may be punished by imprisonment for not more than 30 years.

In any event, the 1978 Act is not applicable with respect to the offense for which Ward may be tried, namely, the murder in the second degree of Godbout as accessory before the fact. Acts 1978, ch. 3, § 3, provides: "That this Act shall take effect July 1, 1978, and shall apply only to offenses committed on or after that date, for which the defendant is sentenced pursuant to this Act." Since the offense charged to Ward occurred prior to 1 July 1978, the Act does not apply to repeal the former § 414 prescribing the punishment for murder in the second degree. Former § 414 remains in full force and effect with respect to the punishment to which Ward is subject if he is convicted of the murder in the second degree of Godbout as an accessory before the fact.

## VI

Ward filed below a separate motion to dimiss the indictment on the ground that a trial would violate the double jeopardy clause of the fifth amendment to the Constitution of the United States. Ward filed a cross-appeal presenting the question whether retrial was barred by the double jeopardy provision. The State moved to dismiss the cross-appeal

---

21. Of course, a person specifically charged with murder as an accessory before the fact may not be convicted thereunder as a principal.

alleging that there had been no final judgment on that motion to dismiss. Code (1974) §§ 12-101 and 12-301 of the Courts and Judicial Proceedings Article. The motion was expressly not ruled upon by the judge below. The judgment of the trial judge in dismissing the indictment was explicitly not predicated upon a violation of the constitutional guarantee against being placed twice in jeopardy. We have said that a denial of a motion to dismiss an indictment on the ground of double jeopardy is appealable immediately, *Stewart v. State,* 282 Md. 557, 570, 386 A. 2d 1206 (1978), but here there was no such denial. Moreover, we are not persuaded in the circumstances to exercise our discretion under Rule 885 to decide the point even though not decided by the trial court. The motion to dismiss the cross-appeal is granted.

> *Judgment reversed; case remanded for trial in accordance with this opinion; motion to dismiss cross-appeal granted; costs to be paid by appellee.*