682 A.2d 694

**STATE of Maryland**

v.

**Michael Stewart MATUSKY.**

**No. 124 Sept. Term, 1995.**

Court of Appeals of Maryland.

Sept. 18, 1996.

468

Gwynn X. Kinsey, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on brief), Baltimore, for petitioner.

Edward C. Covahey, Jr. (Covahey & Boozer, P.A., on brief), Towson, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

RAKER, Judge.

We granted certiorari in this case to determine whether the trial court correctly applied the declaration against penal interest exception to the rule precluding admission of hearsay evidence. We shall hold that the trial court interpreted the exception too broadly, erroneously admitting collateral portions of the hearsay declaration that did not directly incriminate the declarant.

## I.

In May, 1993, Respondent Michael Stewart Matusky was indicted in the Circuit Court for Baltimore County on two counts of first-degree murder in connection with the stabbing deaths of Gertrude and Pamela Poffel. When the police initially investigated the crime in January, 1993, they questioned Matusky, as well as Pamela Poffel's estranged husband, Richard Dean White, and White's fiancée, Rebecca Marchew-

ka. In these interviews, White told the police that he knew nothing about the crimes. He also told the police that he spent the entire day of the crime shopping with Marchewka. Marchewka corroborated White's account.

According to Marchewka's subsequent testimony at trial, three months after the initial police interviews, White told Marchewka in confidence that he knew who committed the crimes. White's declaration to Marchewka implicated Matusky as the murderer. Two days after White related his account to Marchewka, she contacted the police. Marchewka retracted her prior statements, which corroborated White's alibi, explaining that she lied at White's request because he feared revocation of his parole if the police knew he had actually been drinking at a bar. Marchewka then recounted White's statements to the police.

White and Matusky were both indicted on two counts of first-degree murder in violation of Maryland Code (1957, 1992 Repl.Vol., 1996 Cum.Supp.) Article 27, § 410. They were tried separately, and Matusky's trial was scheduled to take place before White's. Prior to the commencement of Matusky's trial, both the State and defense counsel sought a ruling on the admissibility of White's declaration to Marchewka. At the initial pre-trial hearing, the court denied the defense motion to exclude the declaration without hearing Marchewka's testimony, but informed the State that the declaration might later be excluded, depending on Marchewka's live testimony.

Immediately before trial, the court again considered the admissibility of the declaration. At this hearing, the court heard testimony from Marchewka, outside the presence of the jury. After hearing Marchewka's testimony as well as oral argument from counsel, the court again concluded that the declaration was admissible, stating that:

[Defense counsel's] argument with respect to the penal interests would be the thing that I really have to make the call on, talking here about admissibility not the weight; the jury will decide that. I find, from a reasonable person

standard, as [the State's Attorney] articulated, would know that there is something against your pecuniary, proprietary or penal interests by discussing a homicide or violent act and then driving someone to the place where that act was to be carried out and driving them away, then giving a statement to the police which was a truthful statement; so, assuming the declarant is unavailable, in accordance with the other standard, I am prepared to rule that the statements are admissible.

Matusky was tried before a jury in January, 1994. White did not testify at Matusky's trial because he asserted his Fifth Amendment privilege. The court therefore found that White was unavailable.[1] Marchewka, the State's key witness at trial, gave the following testimony regarding White's statements to her:

[STATE'S ATTORNEY]: Did [White] say anything to you on the ride home [from the bar]?

[MARCHEWKA]: He said that he was very upset and unhappy.

\* \* \* \* \* \*

[STATE'S ATTORNEY]: Did he appear upset to you?

[MARCHEWKA]: Yes, he did.

[STATE'S ATTORNEY]: Could you tell if he had been drinking?

[MARCHEWKA]: Yes, he had been drinking.

\* \* \* \* \* \*

[STATE'S ATTORNEY]: What happened next . . .

[MARCHEWKA]: He laid down in the bed and told me that he had something that he wanted to tell me but he couldn't and I asked him why and he said because it would hurt me. And I asked him to tell me any way.

---

**1.** Following Matusky's conviction, White was tried on the murder charges and acquitted.

[STATE'S ATTORNEY]: When you asked him to tell you did he, in fact, tell you something?

[DEFENSE COUNSEL]: Objection, Your Honor.

[THE COURT]: Objection noted for the record and overruled.

[MARCHEWKA]: Yes, he did.

[STATE'S ATTORNEY]: What did he tell you, tell the ladies and gentlemen of the jury.

[MARCHEWKA]: He told me that he knew who killed Pam and Trudy [Gertrude] Poffel and I asked him who and he said Michael Matusky and I asked him how he knew and he said because he was in the car.

[STATE'S ATTORNEY]: Did he indicate whose car he was in?

[MARCHEWKA]: Michael's.

[STATE'S ATTORNEY]: Did he indicate to you how he got to Pam and Trudy's residence in Michael's car?

[MARCHEWKA]: He said he drove.

[STATE'S ATTORNEY]: Did he tell you where he had been prior to going to Pam and Trudy's?

[MARCHEWKA]: Yes, they had been at The Pit and at Wargo's [local bars].

[STATE'S ATTORNEY]: When you say they, who are you referring to?

[MARCHEWKA]: Michael [Matusky] and Richard [White].

[STATE'S ATTORNEY]: This is what Richard told you?

[MARCHEWKA]: Yes.

\* \* \* \* \* \*

[STATE'S ATTORNEY]: Did he tell you what occurred at Wargo's?

[MARCHEWKA]: Yes, he said that he and Michael had a discussion, that Michael wants to kill Pam and Trudy because of what he did, what they did to Ted and he said he tried to talk Michael out of it.

[STATE'S ATTORNEY]: This conversation occurred prior to going to the Poffels?

[MARCHEWKA]: Yes.

[STATE'S ATTORNEY]: Did Richard say whether or not he went inside the house?

[MARCHEWKA]: He said no, he sat in the car.

[STATE'S ATTORNEY]: Did he tell you what he did after that?

[MARCHEWKA]: Said they drove away.

[STATE'S ATTORNEY]: When he told you that what was your reaction?

[MARCHEWKA]: I was very upset, it's hard for me to believe.

[STATE'S ATTORNEY]: When Richard saw how upset you were what did he say or do?

[MARCHEWKA]: He was concerned about who I was going to tell, what I was going to do with the information.

[STATE'S ATTORNEY]: Did he specifically ask you that?

[MARCHEWKA]: Yes, he did.

[STATE'S ATTORNEY]: When he asked you what you were going to do with that information what did you tell him?

[MARCHEWKA]: I told him at that time I did not know what I was going to do.

[STATE'S ATTORNEY]: When you told him that what did he say?

[MARCHEWKA]: He wanted—he asked me to take him to back to the bar.

[STATE'S ATTORNEY]: Prior to going back to the bar did you discuss with Richard his involvement and what happened?

[MARCHEWKA]: Yes, but he said that he didn't—he didn't do anything wrong, that he was just in the car and I tried to tell him that he was considered an accomplice and he said no.

In addition to Marchewka's testimony, the State also presented evidence of a bloody shoeprint found at the crime scene. A police expert testified that the shoeprint was consistent with the size and style of a pair of shoes belonging to Matusky, although the expert could not declare a conclusive match between Matusky's shoe and the shoeprint. No other physical evidence connected Matusky to the crime scene.

Matusky testified in his own behalf and denied any involvement in the crimes. Contrary to Marchewka's account, he testified that he did not drive to the Poffels' home with White on the night of the murders. He also denied harboring any animosity toward the Poffels for the death of Ted Poffel, instead attributing Ted Poffel's suicide to his cocaine addiction. Matusky also suggested that White had a much stronger motive to kill the Poffels. Matusky testified that White, who was Pamela Poffel's estranged husband and Gertrude Poffel's son-in-law, was angry with the Poffels for depriving him of money and investments.[2]

The jury convicted Matusky on both counts of first-degree murder. The court sentenced him to two terms of life imprisonment without possibility of parole, to be served consecutively.

Matusky noted a timely appeal to the Court of Special Appeals, challenging the trial court's admission of White's hearsay declaration to Marchewka. The Court of Special Appeals reversed Matusky's convictions, concluding that the trial court should not have admitted White's declaration *in toto. Matusky v. State,* 105 Md.App. 389, 660 A.2d 935 (1995). Writing for the court, Judge Joseph Murphy, Jr., reasoned that:

> Applying *Simmons, Wilson,* and *Williamson* to the facts of this case, we conclude that the trial judge should have excluded the statements in White's declaration that identified appellant as the killer and supplied appellant's motive

---

2. Although it did not appear on the record, at oral argument, Respondent also represented to this Court that White inherited $26,000 as a result of Pamela Poffel's death.

for the murders. Those statements were simply not self-inculpatory as to White.... With respect to those portions of the declaration in which White described his role, cross-examination of White would have been of marginal utility to appellant. The same cannot be said, however, about other statements in the declaration. It is obvious that appellant had an important interest in cross-examining White with respect to those portions of the declaration in which White (1) identified appellant as the killer and (2) discussed appellant's motive for the murders. Those statements should have been redacted from White's declaration against interest.

*Id.* at 403, 660 A.2d at 941. We granted the State's petition for a writ of certiorari to answer the following question:

Under the hearsay exception for a declaration against penal interest, is the admissible statement the extended declaration or only those remarks that are individually self-inculpatory?

## II.

The State contends that the outcome of this case is governed by our decision in *State v. Standifur*, 310 Md. 3, 526 A.2d 955 (1987). Under our holding in *Standifur*, the State argues, the hearsay exception for declarations against penal interest applies to both individually self-inculpatory statements and collateral statements. In addition, the State maintains that the Supreme Court decision in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), does not control our decision, because *Williamson* interprets Federal Rule of Evidence 804(b)(3), while the present case was decided under Maryland common law.[3] Finally, the State

---

**3.** Matusky's trial took place in January, 1994. The Maryland Rules of Evidence did not become effective until July 1, 1994. In trials commencing after July 1, 1994, the declaration against interest exception is governed by Maryland Rule 5–804(b)(3), provided that: "(1) any trial or hearing commenced prior to July 1, 1994 shall continue to be governed by the law and Rules in effect on June 30, 1994, and (2) no evidence shall be admitted against a defendant in a criminal action in proof of a

argues that even if the test articulated in *Williamson* applies, the circumstances in this case indicate that White was not merely attempting to shift blame to Matusky or to minimize his own culpability. Therefore, the State maintains, White's extended declaration to Marchewka should be admitted in its entirety.

Respondent argues that *Williamson* should govern the decision to admit a declaration against penal interest. Under both *Williamson* and prior Maryland cases, Respondent contends, at least those portions of the declaration shifting blame from White to Matusky should have been excluded. Respondent maintains that only those portions of White's declaration that individually implicated White should have been admitted.

### III.

The declaration against penal interest exception to the rule precluding the admission of hearsay evidence is predicated on the assumption that the declarant would not make a statement adverse to his or her penal interest unless that declarant believed it to be true. *State v. Standifur*, 310 Md. 3, 11, 526 A.2d 955, 959 (1987). While this rationale supports admitting individual statements that are contrary to the declarant's penal interest, courts and commentators differ on whether the

---

crime committed prior to July 1, 1994, unless that evidence would have been admissible under the law and Rules in effect on June 30, 1994...." Court of Appeals of Maryland, Rules Order, 21 Md.Reg. 1 (1994).

Maryland Rule 5–804(b) provides, in pertinent part, that:
The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(3) *Statement Against Interest.*—A statement which was at the time of its making so contrary to the declarant's pecuniary or proprietary interest, so tended to subject the declarant to civil or criminal liability, or so tended to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

rationale applies to other portions of a hearsay declaration that do not directly implicate the declarant.[4]

Wigmore, for example, proposed that if part of a hearsay declaration was self-inculpatory, then the entire declaration should be admissible, reasoning that:

> Since the principle is that the statement is made under circumstances fairly indicating the declarant's sincerity and accuracy ... it is obvious that the situation indicates the correctness of whatever he may say while under that influence. In other words, the statement may be accepted, not merely as to the specific fact against interest, but also as to *every fact contained in the same statement.* ... All parts of the speech or entry may be admitted which appear to have been made while the declarant was in the trustworthy condition of mind which permitted him to state what was against his interest.

5 J. WIGMORE, EVIDENCE IN TRIALS AT COMMON LAW § 1465, at 339–41 (Chadbourn rev. 1974 & 1996 Supp.). Other commentators took the opposite position, *i.e.*, that none of the collateral portions of declarations against interest should be admitted. *See* B. Jefferson, *Declarations Against Interest: An Exception to the Hearsay Rule,* 58 HARV.L.REV. 1, 60–61 (1944).[5]

---

**4.** Earlier common law decisions did not recognize any exception to the rule against hearsay for declarations against penal interest. *See Standifur,* 310 Md. at 10 n. 2, 526 A.2d at 958 n. 2.

**5.** Jefferson rejected Wigmore's rationale for admitting collateral portions of declarations against penal interest, writing that:

> Wigmore ... suggests that ... "All parts of the speech or entry may be admitted which appear to have been made while the declarant was in the trustworthy condition of mind which permitted him to state what was against his interest." This test states a justification for the doctrine, namely, that a declarant is in a trustworthy frame of mind when he makes a declaration against interest, and that this frame of mind continues for other statements made at the same time. But when a self-serving statement is made along with a disserving one, it may well be doubted that the declarant is in a trustworthy frame of mind when he makes the self-serving statement. It would appear that a self-serving statement lacks trustworthiness whether it accompanies a disserving statement or not. The basis of this exception is not that a declarant is in a general trustworthy frame of mind. The

Professor McCormick, among others, advocated an intermediate approach, permitting the admission of some but not all collateral portions of declarations against penal interest. He suggested that courts separate the self-serving from the disserving portions of the declaration against interest, excluding only the self-serving portions. C. MCCORMICK, HANDBOOK OF THE LAW OF EVIDENCE § 279(d), at 677 (E. Cleary ed., 2d ed. 1972). Thus, "collateral neutral" statements, *i.e.*, those that neither incriminate the declarant nor shift blame to a third party, could be admitted under Professor McCormick's approach.

In *State v. Standifur*, 310 Md. 3, 5, 526 A.2d 955, 956 (1987), we considered the question of whether a declaration against the penal interest of an unavailable declarant, offered by the State against the accused in a criminal trial, was sufficiently reliable to qualify under the common law exception to the hearsay rule. We analyzed the alternative views of the scope of the declaration against penal interest exception discussed above, and adopted the intermediate position advocated by Professor McCormick. We articulated a test for trial judges to apply in deciding whether or not to admit a statement against interest. First, the proponent of the declaration must demonstrate that the declarant is unavailable. *Id.* at 12, 526 A.2d at 959. Once the proponent establishes unavailability, the court must:

> carefully consider the content of the statement in the light of all known and relevant circumstances surrounding the making of the statement and all relevant information concerning the declarant, and determine whether the statement was in fact against the declarant's penal interest and wheth-

---

probability of trustworthiness comes from the facts asserted being disserving in character. Once those facts are left behind the probability of trustworthiness for other statements seems highly speculative and conjectural. It would seem, therefore, that the courts are not justified in admitting self-serving statements merely because they accompany disserving statements, and a neutral collateral statement should fare no better.

Jefferson, *supra,* at 60.

er a reasonable person in the situation of the declarant would have perceived that it was against his penal interest at the time it was made.

*Id.* at 17, 526 A.2d at 962.[6] If the hearsay statement passes this part of the test, the trial judge must next consider:

whether there are present any other facts or circumstances, including those indicating a motive to falsify on the part of the declarant, that so cut against the presumption of reliability normally attending a declaration against interest that the statements should not be admitted.

---

6. Courts and commentators have propounded differing interpretations of the "reasonable person" test set forth in Federal Rule 804(b)(3). As one commentator explained:

Courts might interpret the "reasonable man" test in three ways. First, a court might ignore the declarant's subjective understanding and ask only whether an ordinary person would recognize the disserving effect of his statement. Second, the court might explore what the declarant actually thought, but ignore his understanding if it is unreasonable. Finally, the court may admit the statement if the declarant thought the statement was against his interest, regardless of whether either the statement was in fact disserving or a normal person would have so thought. Under the third approach, a court would exclude the statement if the declarant had not actually recognized its disserving effect, even if a normal person would have recognized it. Under this approach, the court would ask what the normal person would have thought only if it could not determine the declarant's actual understanding.

P. Tague, *Perils of the Rulemaking Process: The Development, Application, and Unconstitutionality of Rule 804(b)(3)'s Penal Interest Exception,* 69 Geo.L.J. 851, 931–33 (1987). We addressed this issue in *Standifur,* noting that:

Unless the declarant ... believed [at the time the declaration was made that] the statement ... [was] against his penal interest, there is no basis for presumed reliability. However, because of the unavailability of the declarant and other problems of proof, the party urging this exception is not required to prove the actual state of mind of the declarant but must prove sufficient surrounding facts from which the trial judge may inferentially determine what the state of mind of a reasonable person would have been under the same or similar circumstances.

*Standifur,* 310 Md. at 12, 526 A.2d at 962. *See also United States v. Palumbo,* 639 F.2d 123, 133 & n. 11 (3d Cir.1981) (Adams, J., concurring), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); McCormick on Evidence § 280, at 827 (E. Cleary ed., 3d ed. 1984 & 1987 Supp.).

*Id.*, 526 A.2d at 962.[7]

 Even if a statement passes these threshold requirements for admissibility, however, *Standifur* also requires the trial judge to conduct a final inquiry. *Standifur* provides that

---

7. In addition to these requirements, Maryland Rule 5–804(b)(3) also requires "corroborating circumstances" when the hearsay declaration inculpates the declarant and exculpates the accused. The Rule does not explicitly require corroborating circumstances when the declaration incriminates the accused. A number of federal circuits, however, have required corroboration for both inculpatory and exculpatory declarations. *See, e.g., United States v. Garcia*, 897 F.2d 1413, 1420–21 (7th Cir.1990); *United States v. Riley*, 657 F.2d 1377, 1383 & n. 7, 1387 n. 12 (8th Cir.1981); *United States v. Palumbo*, 639 F.2d 123, 131 & n. 5 (3d Cir.) (Adams, J., concurring), *cert. denied*, 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); *United States v. Oliver*, 626 F.2d 254, 261 & n. 9 (2d Cir.1980); *United States v. Alvarez*, 584 F.2d 694, 701–02 (5th Cir.1978). The Supreme Court did not reach the corroboration issue in *Williamson*. *See Williamson v. United States*, 512 U.S. 594, ──, 114 S.Ct. 2431, 2437, 129 L.Ed.2d 476 (1994).

The ABA Trial Evidence Committee of the Litigation Section discussed the corroboration requirement of Federal Rule 804(b)(3), observing that:

> While Rule 804(b)(3) provides that "a statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances thereby indicate the trustworthiness of the statement," the Rule has no similar requirement for inculpatory declarations offered by the prosecution. Several circuits, however, have judicially imposed a requirement that inculpatory declarations be similarly corroborated by other "indicia of reliability." It has been held that the Confrontation Clause of the Constitution requires no less.
>
> As judicially supplemented, then, an inculpatory statement against penal interest is admissible against the defendant if: (1) the declarant is unavailable; (2) the statement is so far contrary to the declarant's penal interest that a reasonable person in his position would not have made the statement unless he believed it to be true; and *(3) corroborating circumstances clearly indicate the statement's trustworthiness*. In practice, the second and third requirements frequently merge into one—was the declarant's statement, under all the circumstances, in fact against his penal interest?

American Bar Ass'n, Trial Evidence Committee, Emerging Problems Under the Federal Rules of Evidence (1991), *reprinted in* Federal Rules of Evidence for United States Courts 524–25 (1993) (Appendix II) (citations omitted) (emphasis added). *See also State v. Mason*, 194 W.Va. 221, 460 S.E.2d 36, 45 n. 14 (1995) (quoting *United States v. Garcia*, 897 F.2d 1413, 1420–21 (7th Cir.1990), for the proposition that Federal Rule 804(b)(3) requires proof of corroborating circumstances).

> A statement against interest that survives this analysis, *and those related statements so closely connected with it as to be equally trustworthy,* are admissible as declarations against interest.

310 Md. at 17, 526 A.2d at 962 (emphasis added). Thus, even after determining that the proffered evidence passes the first three requirements for admissibility, *Standifur* requires that the trial judge parse the entire declaration to determine which portions of it are directly contrary to the declarant's penal interest, and which collateral portions are so closely related as to be equally trustworthy.

---

In determining whether a declaration against penal interest was sufficiently corroborated, the United States Court of Appeals for the Fifth Circuit suggested a number of factors for trial court to consider: (1) whether there is any apparent motive for the out-of-court declarant to misrepresent the matter, (2) the general character of the speaker, (3) whether other people heard the out-of-court statement, (4) whether the statement was made spontaneously, (5) the timing of the declaration and [ (6) ] the relationship between the speaker and the ... [declarant].

*Alvarez,* 584 F.2d at 702 n. 10.

Imposing a corroboration requirement for both inculpatory and exculpatory declarations is not inconsistent with our approach in *Standifur.* While we did not expressly state in *Standifur* that corroborating circumstances must be proven in all instances, we required the trial court to consider whether any circumstances indicated a motive to falsify, or otherwise undermined the reliability of the declaration. *Standifur,* 310 Md. at 17, 526 A.2d at 962.

Moreover, even if hearsay evidence satisfies the requirements of the declaration against penal interest exception, it must also meet the requirements of the Confrontation Clause of the Sixth Amendment to be admissible. *Wilson v. State,* 334 Md. 313, 323, 639 A.2d 125, 129–30 (1994); *Chapman v. State,* 331 Md. 448, 454–55, 628 A.2d 676, 679–80 (1993). The Confrontation Clause requires proof that the hearsay statements are reliable. *Wilson,* 334 Md. at 323, 639 A.2d at 130; *Simmons v. State,* 333 Md. 547, 556, 636 A.2d 463, 467, *cert. denied,* —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994); *Chapman,* 331 Md. at 455, 628 A.2d at 679. Reliability may be proven by demonstrating that the hearsay falls within a "firmly rooted" exception, or by showing that it bears "particularized guarantees of trustworthiness." *Wilson,* 334 Md. at 323, 639 A.2d at 131 (quoting *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). We have previously concluded that the declaration against penal interest exception to the hearsay rule is not "firmly rooted," and therefore, the proponent must demonstrate "particularized guarantees of trustworthiness." *Simmons,* 333 Md. at 560, 636 A.2d at 469.

Applying this test to the declaration at issue in *Standifur*, we concluded in that case that the entire declaration was inadmissible because it was not a declaration against penal interest. First, we determined that the State had not established that a reasonable person in the declarant's position would have believed the declaration to be self-incriminating, because "[r]ather than confessing criminal misconduct, these statements appear to represent an attempt to satisfy the police while avoiding criminal involvement." *Id.* at 19, 526 A.2d at 963. Even if the declaration had passed this prong of the test for admissibility, however, we observed that it would have failed the reliability prong of the test. The declarant made the declaration to the police, during custodial interrogation, fearing revocation of his parole. *Id.* at 20, 526 A.2d at 963. He "apparently wished to curry favor with the authorities." *Id.* at 20, 526 A.2d at 963. Under these circumstances, we concluded that "the statement [was not] ... sufficiently reliable to be admitted for the purpose of inculpating an accused in a criminal case." *Id.*, 526 A.2d at 963. Because we concluded that the statement was not admissible as an exception to the hearsay rule, we did not consider "separate issues that are possibly generated by the Confrontation Clause." *Id.* at 20, 526 A.2d at 963.

Similarly, in *Brown v. State*, 317 Md. 417, 564 A.2d 772 (1989), we applied the *Standifur* test to determine the admissibility of two declarations against penal interest. In *Brown*, the hearsay declarant, Bruce, and a co-defendant, Williams, were both charged with unlawful possession of handguns. When Bruce pled guilty to the charge, he told the court under oath that the guns belonged to a third participant, Brown. *Id.* at 419–20, 564 A.2d at 773. Bruce also testified at Williams' trial, stating that Brown had asked him to hold the guns until Brown could sell them. *Id.*, 564 A.2d at 773. At Brown's revocation of probation hearing, however, Bruce refused to testify to the source of the guns; therefore, the court permitted the state to introduce the transcripts of Bruce's prior testimony in evidence. *Id.* at 420–21, 564 A.2d at 773. Brown

objected, contending that these statements were inadmissible hearsay.

Applying *Standifur*, we concluded that both of Bruce's prior statements were inadmissible collateral statements outside the scope of the declaration against penal interest exception. *Id.* at 423, 564 A.2d at 775–76. We explained that:

> The first statement offered by the State—that given by Bruce at the time of the entry of his guilty plea—was collateral to his admission of guilt and carries with it precious little intrinsic or extrinsic indicia of reliability ... This is not a situation where the admission of guilt by Bruce, in and of itself, furnishes any evidence against Brown. Rather, this is a case of a criminal, who has already admitted his guilt, being pressed by the judge who will soon sentence him, and by the prosecutor who may make a recommendation concerning his sentence, to disclose information that may lead to a subsequent criminal prosecution. Under these circumstances, Bruce may well have been motivated by the desire to curry favor with the authorities, and by the desire to reduce his own culpability—motives that we have identified as frequently present in these situations, and which combine to make 'inevitably suspect' statements of this type.

*Id.* at 423–24, 564 A.2d at 775. Similarly, we concluded that Bruce's second statement, given at Williams' trial, was also "wholly collateral," as well as unreliable because of Bruce's apparent motive to exculpate Williams. *Id.* at 425, 564 A.2d at 776.

## IV.

### A.

■ Applying the *Standifur* analysis to the facts of the instant case, we conclude that the trial court should not have admitted Marchewka's testimony in its entirety.[8] We shall

---

8. In evaluating the admissibility of Marchewka's testimony, we consider only the testimony she gave at trial. Although the trial court ruled on

assume, *arguendo*, that the trial court correctly determined that White's declaration was in fact adverse to his penal interest,[9] and that a reasonable person in White's circumstances would have realized that his declaration was contrary to his penal interest. *Standifur* also required, however, that the trial court parse the hearsay declaration to admit only those individual statements that were contrary to White's penal interest, along with the additional portions that were "so closely connected with it as to be equally trustworthy[.]" *Standifur*, 310 Md. at 17, 526 A.2d at 962. This the trial court failed to do.

Based on our review of the record, we agree with the Court of Special Appeals that the trial court erroneously admitted Marchewka's testimony *in toto* rather than analyzing the declaration statement by statement to determine whether collateral portions of White's account should be redacted. As the intermediate appellate court concluded, the trial court should have redacted those portions of White's declaration identifying Matusky as the murderer and suggesting Matusky's motive for the crime. 105 Md.App. at 403, 660 A.2d at 941. These portions of the declaration did not directly incriminate White. Moreover, these non-incriminating statements are not as trustworthy as self-incriminating statements, because they serve to shift blame from White to Matusky. Because the trial court failed to properly analyze White's hearsay declaration, we agree with the Court of Special Appeals that Respondent's convictions must be reversed.

---

admissibility at the pre-trial hearing on the motion in limine, only the testimony given by Marchewka before the jury could result in prejudice to the defendant.

**9.** As we explained in *State v. Ward*, 284 Md. 189, 396 A.2d 1041 (1978):

An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually or constructively at the moment of perpetration. An *accessory after the fact* is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment. *Id.* at 197, 396 A.2d at 1046–47.

## B.

For further guidance on remand, we observe that the *Standifur* test also requires the trial court to consider "whether there are any other facts or circumstances, including those indicating a motive to falsify on the part of the declarant, that . . . cut against the presumption of reliability normally attending a declaration against interest." *Id.*, 526 A.2d at 962. The trial court's assessment of the declaration's reliability is a fact-intensive determination which we shall not ordinarily reverse unless it is clearly erroneous. *See Wamsley v. Wamsley*, 333 Md. 454, 462, 635 A.2d 1322, 1326 (1994); *see also Garcia*, 897 F.2d at 1421; *Alvarez*, 584 F.2d at 701. The trial court below did not discuss on the record any of the factors undermining the reliability of White's statement. If, on remand, the trial court concludes that White's declaration was unreliable, then none of Marchewka's testimony should be admitted under this hearsay exception.

## V.

## A.

Because the case on remand will be governed by the Maryland Rules of Evidence, we shall next address the effect of Maryland Rule 5–804(b)(3) on the scope of the declaration against penal interest exception. *See supra* note 3. In *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), the Supreme Court considered the admissibility of an extended hearsay declaration under Federal Rule 804(b)(3), which closely corresponds to Maryland Rule 5–804(b)(3). The police arrested the hearsay declarant, Harris, after discovering nineteen kilos of cocaine in Harris's car during a traffic stop. *Id.* Following his arrest, Harris gave a statement to the police that implicated Williamson as the head of a drug distribution scheme. Harris's statement was also self-incriminatory, albeit implicating him in a more minor role

as a drug courier.[10] *Id.* Despite an offer of immunity, Harris refused to testify at Williamson's trial. *Id.* at ——, 114 S.Ct. at 2434. The State introduced Harris's hearsay declaration through testimony of the investigating police officer. Williamson objected to the admission of Harris's hearsay declaration, but the trial court overruled the objection, concluding that Harris's statement was admissible as a declaration against penal interest. *Id.* Williamson was convicted of several drug trafficking offenses. On appeal, the Eleventh Circuit affirmed the convictions without opinion. 981 F.2d 1262 (11th Cir. 1992).

The Supreme Court reversed the convictions and remanded the case for a new trial, concluding that the trial court failed to properly analyze the admissibility of Harris's hearsay declaration. *Id.* at —— – ——, 114 S.Ct. at 2437–38. Justice O'Connor delivered the opinion of the Court, stating that:

> [T]he most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The [trial] court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

*Id.* at ——, 114 S.Ct. at 2435.[11]

The Court held that only those portions of the extended declaration that incriminate the declarant should be admit-

---

**10.** Harris first gave a statement to the police in a telephone interview, in which he implicated not only Williamson, but an unnamed third party. 512 U.S. at ——, 114 S.Ct. at 2433. He later gave a second statement to the police, which was inconsistent with the first in some respects. *Id.* Harris did not reveal that Williamson was the drug dealer until he learned that the police planned a controlled delivery of the drugs to Williamson. *Id.* at 2433–34.

**11.** Justice O'Connor, like Professor Jefferson, rejected the Wigmore view that a declarant, while making a declaration against penal interest, is in a trustworthy state of mind. *See supra* note 5. She reasoned that:

ted.[12] *Id.* at ———, 114 S.Ct. at 2435. This approach requires

> The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts. One of the most effective ways to lie is to mix falsehood with truth, especially truth that seems particularly persuasive because of its self-inculpatory nature. . . . Self-exculpatory statements are exactly the ones which people are most likely to make even when they are false; and mere proximity to other, self-inculpatory, statements does not increase the plausibility of the self-exculpatory statements.

512 U.S. at ———, 114 S.Ct. at 2435.

The Supreme Court previously described this problem as one of "selective reliability" within an extended hearsay declaration. *See Idaho v. Wright,* 497 U.S. 805, 824, 110 S.Ct. 3139, 3151, 111 L.E.2d 638 (1990). *See also United States v. Matthews,* 20 F.3d 538, 545 (2d Cir.1994) ("The difficulty is that if the statement against penal interest is multi-faceted, its facets may not be uniformly trustworthy.").

**12.** Six Justices adopted the test articulated by Justice O'Connor. Although all of the Justices agreed that some portions of Harris's declaration should have been redacted, however, the Court was divided on the appropriate standard to apply in defining the scope of the declaration against penal interest exception. Justice Scalia, in a concurring opinion, agreed with the approach articulated by Justice O'Connor, but further explicated the standard. He noted that:

> A statement obviously can be self-inculpatory . . . without consisting of the confession 'I committed X element of Y crime.' . . . Moreover, a declarant's statement is not magically transformed from a statement against penal interest into one that is inadmissible merely because the declarant names another person or implicates a possible codefendant.

512 U.S. at ———, 114 S.Ct. at 2438 (Scalia, J., concurring).

Justice Ginsburg, in a concurring opinion joined by three other Justices, also adopted the test articulated by Justice O'Connor, but disagreed with Justice O'Connor's application of the test to the facts of the case. *Id.* at ——— ———, 114 S.Ct. at 2438–39 (Ginsburg, J., concurring). In Justice Ginsburg's view, the facts of the case were so suggestive of blame-shifting that the declaration was presumptively unreliable, and thus Harris's entire declaration should have been excluded. *Id.* at ———, 114 S.Ct. at 2439. Justice Ginsburg, concurring in the result, determined that the State should be permitted an opportunity to argue on remand that the erroneous admission of Harris's statement was harmless error. *Id.* at ———, 114 S.Ct. at 2440.

Finally, Justice Kennedy, in a concurring opinion joined by two other Justices, adopted an interpretation of Federal Rule 804(b)(3) analogous to our earlier interpretation in *Standifur.* *Id.* at ——— ———, 114 S.Ct. at 2440–41 (Kennedy, J., concurring). Justice Kennedy interpreted Rule 804(b)(3) to permit admission of some collateral statements, consistent with Professor McCormick's approach. *Id.* at ———, 114 S.Ct. at 2441. Thus, self-serving collateral statements would be inadmissible, but collateral neutral statements would be admissible. *Id.* at ———, 114

the trial court to parse the entire extended declaration to admit only the self-incriminating portions. *Id.* at ── ─ ──, 114 S.Ct. at 2436–37.

 As Justice O'Connor further explained, however, the trial court must consider the surrounding circumstances to determine whether an individual statement is self-incriminating:

> [W]hether a statement is self-inculpatory or not can only be determined by viewing it in context. Even statements that are on their face neutral may be against the declarant's interest. . . . [S]tatements that give other significant details about the crime may, depending on the situation, be against the declarant's interest. The question . . . is always whether the statement was sufficiently against the declarant's penal interest 'that a reasonable man in the declarant's position would not make the statement unless believing it true,' and this question can only be answered in light of all the surrounding circumstances.

*Id.* at ── ─ ──, 114 S.Ct. at 2436–37.[13] *Accord United States v. Sasso,* 59 F.3d 341, 349 (2d Cir.1995); *United States*

─────────

S.Ct. at 2444. Justice Kennedy also acknowledged that declarations against penal interest made to the authorities should not be admitted if the declarant was "motivated by a desire to curry favor with the authorities." *Id.* (citations omitted).

**13.** Although the Supreme Court did not actually proceed to redact the extended hearsay declaration in *Williamson,* the Court provided a number of hypotheticals to illustrate what types of statements could be admitted as declarations against penal interest. For example, Justice O'Connor noted that the statement " 'I hid the gun in Joe's apartment' may not be a confession of a crime; but if it is likely to help the police find the murder weapon, then it is certainly self-inculpatory." 512 U.S. at ──, 114 S.Ct. at 2437. In addition, Justice O'Connor observed that the statement "Sam and I went to Joe's house" could also be admitted if a "reasonable person . . . would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy." *Id.* In his concurring opinion, Justice Scalia also noted that:

> [I]f a lieutenant in an organized crime operation described the inner workings of an extortion and protection racket, naming some of the other actors and thereby inculpating himself on racketeering and/or conspiracy charges, I have no doubt that some of those remarks could be admitted as statements against penal interest.

*v. Nagib,* 56 F.3d 798, 804 (7th Cir.1995); *United States v. Canan,* 48 F.3d 954, 959–60 (6th Cir.1995); *United States v. Rothberg,* 896 F.Supp. 450, 453 (E.D.Pa.1995); *United States v. Sims,* 879 F.Supp. 828, 832 (N.D.Ill.1995); *Ciccarelli v. Gichner Systems Group,* 862 F.Supp. 1293, 1298–1300 (M.D.Pa.1994); *Smith v. State,* 647 A.2d 1083, 1088 (Del.1994); *State v. Coates,* 661 So.2d 571, 580–81 (La.App.1995); *State v. Ford,* 539 N.W.2d 214, 227 (Minn.1995); *Williams v. State,* 667 So.2d 15, 19 & n. 1 (Miss.1996); *Cofield v. State,* 891 S.W.2d 952, 956 (Tex.Cr.App.1994); *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36, 44–45 (1995).

The Supreme Court's interpretation of Federal Rule 804(b)(3) in *Williamson v. U.S.,* 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), is not binding on the states, because it does not rely on federal constitutional principles.[14] Nonetheless, we find the analysis in *Williamson* persuasive, and we shall adopt it as part of Maryland law, in accord with a number of other states.[15] *See, e.g., Smith v. State,* 647 A.2d

---

*Id.* at ——, 114 S.Ct. at 2438 (Scalia, J., concurring). Thus, the Court intended that, under some circumstances, statements incriminating both the declarant and a third party could be admitted as declarations against penal interest.

In the case before us, we note that the declaration against penal interest exception to the hearsay rule was the sole basis the State offered to support admission of White's statement to Marchewka that he drove Matusky to the Poffels' house. The State did not offer the statement under the co-conspirator exception to the hearsay rule. *See State v. Rivenbark,* 311 Md. 147, 149, 533 A.2d 271, 272 (1987); *see also* Md.Rule 5–803(a)(5). Indeed, even if they had, the statement does not appear to qualify under that exception because it was not made in furtherance of the conspiracy. *Rivenbark,* 311 Md. at 149, 533 A.2d at 272.

**14.** Justice O'Connor expressly stated in Part II.C of her opinion that "we need not address Williamson's claim that ... the statements were also made inadmissible by the Confrontation Clause[.]" 512 U.S. at ——, 114 S.Ct. at 2437. Because in the case before us we conclude that the trial court failed to properly analyze the declaration under the hearsay rules, we also need not reach the Confrontation Clause issue.

**15.** The dissent relies on *Chandler v. Commonwealth,* 249 Va. 270, 455 S.E.2d 219, *cert. denied,* —— U.S. ——, 116 S.Ct. 233, 133 L.Ed.2d 162 (1995). In *Chandler,* the Supreme Court of Virginia completely rejected the Supreme Court's interpretation of Federal Rule of Evidence

1083, 1088 (Del.1994) ("Although not bound by the Supreme Court's interpretation of F.R.E. 804(b)(3) in construing our identical [rule], ... [w]e find Justice O'Connor's reasoning to be persuasive and we therefore adopt it in construing the Delaware rule.") *Accord State v. Coates* 661 So.2d 571, 580–81 (La.App.1995) (same); *Williams v. State,* 667 So.2d 15, 19 & n. 1 (Miss.1996); *Cofield v. State,* 891 S.W.2d 952, 956 (Tex.Cr. App.1994) (same); *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36, 45 (1995) (adopting the *Williamson* test). Although *Standifur* essentially adopted the federal rule as Maryland common law, prior to adoption of the Maryland Rules of Evidence, *Standifur* was decided without the benefit of the *Williamson* decision. *See Standifur,* 310 Md. at 10–11, 526 A.2d at 958–59.

The central distinction between the *Williamson* approach and our approach in *Standifur* is that "proximity" between the self-inculpatory and "collateral" portions no longer guarantees admissibility. As the Delaware Supreme Court observed in *Smith v. State,* 647 A.2d 1083 (Del.1994), in adopting *Williamson:*

[T]here is no theoretical basis for the admission of neutral, collateral statements. Hearsay statements are generally inadmissible.... A hearsay declaration is admissible, usually under a specific exception only where the declaration has some theoretical basis making it inherently trustworthy. *See Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). Thus, absent some special indicia of reliability and trustworthiness, hearsay statements are inadmissible. *Neutral, collateral statements enjoy no such guarantees of reliability and trustworthiness. Williamson,* 512 U.S. at ——, 114 S.Ct. at 2435.

804(b)(3) in *Williamson* and admitted the declarant's entire statement as a declaration against penal interest. *Id.* 455 S.E.2d at 225. As we noted, *supra,* while the Supreme Court's interpretation of the federal rule is not binding on us, we find it persuasive. Moreover, even if we did not elect to follow *Williamson, Chandler* would be inconsistent with our approach in *Standifur,* which also required the trial court to evaluate the reliability of each statement within a declaration rather than admitting the declaration *in toto. Standifur,* 310 Md. at 17, 526 A.2d at 962.

*Id.* at 1088 (citations omitted) (emphasis added).[16] Therefore, "when ruling upon the admission of a narrative under this rule, a trial court must break down the narrative and determine the separate admissibility of each 'single declaration or remark.'" *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36, 45 (1995) (quoting *Williamson,* 512 U.S. at ——, 114 S.Ct. at 2437). The test for admissibility to be applied to each statement within a declaration is whether a reasonable person in the declarant's circumstances would have believed the statement was adverse to his or her penal interest at the time it was made.

As we have indicated, in this case, the trial court erroneously permitted Marchewka to testify to the entire conversation she had with White. On remand, if the State chooses to offer portions of Marchewka's declaration in evidence, under Maryland Rule 5–804(b)(3), the trial court should admit only those portions of White's communication to Marchewka that truly incriminate White.[17]

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY BALTIMORE COUNTY, MARYLAND.*

---

**16.** Other state and federal courts have adopted similar interpretations of the *Williamson* decision. In *United States v. Sims,* 879 F.Supp. 828 (N.D.Ill.1995), the United States District Court for the Northern District of Illinois stated that:

> The fact that an inculpatory portion is closely related to the portion against interest may be an input into finding that the 'closely related' portion turns out to be against interest itself. After *Williamson,* the key is that a finding that an inculpatory portion is 'closely related' to an against-interest portion will not *itself* warrant 804(b)(3) admissibility. Each admitted statement or portion of statement must be found to be against the penal interests of the declarant.

*Id.* at 832 n. 3. *See also Ciccarelli v. Gichner Systems Group,* 862 F.Supp. 1293 (M.D.Pa.1994).

**17.** Furthermore, if the trial court finds that any portion of the declaration is admissible as a declaration against penal interest, it must then proceed to decide whether that portion satisfies the Confrontation Clause. *See Simmons,* 333 Md. at 555, 636 A.2d at 467; *Chapman,* 331 Md. at 453–54, 628 A.2d at 679.

RODOWSKY, Judge, dissenting.

I respectfully dissent from the holding of the Court set forth in Part IV.A of the majority opinion. That holding is that "the trial court should have redacted those portions of White's declaration identifying Matusky as the murderer and suggesting Matusky's motive for the crime." 343 Md. at 485, 682 A.2d at 703.[1]

The hearsay problem under consideration is plagued with semantic difficulties. In any given case the universe of the data is the whole of what the declarant had to say that is relevant to the charges pending against the accused. The task is to determine whether the universe is admissible against the accused in its entirety, partially, or not at all, as declarations against the penal interest of the declarant. Within this universe of data there can be gradations ranging from hard core, clear cut declarations against penal interest, through varying degrees of inculpatory matter, to the clearly exculpatory or, at least, self-serving statement. In my view a conceptual rule, phrased in terms such as "extended narrative," "statement," "confession," and "declaration," can only be understood when legal holdings are made on specific facts.

Preliminarily, I do not believe that the majority has given appropriate precedential weight to this Court's opinion in *State v. Standifur*, 310 Md. 3, 526 A.2d 955 (1987). Nor does *Standifur* differ substantially from the analysis presented in Parts I, II.A, and II.B of the opinion of Justice O'Connor, joined by five other justices, in *Williamson v. United States*, 512 U.S. 594, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994). Both *Williamson* and *Standifur* require consideration of all of the

---

1. In explaining my views, I too "shall assume, *arguendo*, that the trial court correctly determined ... that a reasonable person in White's circumstances would have realized that his declaration was contrary to his penal interest." 343 Md. at 484–85, 682 A.2d at 702.

 It should also be noted that there was no cross-petition filed. Consequently, any issue involving the Confrontation Clause that may be lurking beneath the surface in this matter is not an issue that is before this Court.

known facts and circumstances surrounding the obtaining of the universe of data in order to determine reliability, and the entire universe may be excluded as unreliable at that level of analysis. 512 U.S. at —— ——, 114 S.Ct. at 2436–37; 310 Md. at 11–13, 526 A.2d at 959–60. Looking at portions of the universe, both opinions exclude matter that is self-serving or exculpatory of the declarant. 512 U.S. at —— ——, 114 S.Ct. at 2434–35; 310 Md. at 12–15, 526 A.2d at 959–61. Both opinions would test the inculpatory nature of the portion of the universe under consideration by a reasonable person test. 512 U.S. at —— ——, 114 S.Ct. at 2435, 2436–37; 310 Md. at 12–13, 526 A.2d at 959–60.

With respect to portions of the universe that are "collateral" or "related" to the core declaration against penal interest, both opinions seem to take substantially the same approach. *Williamson* directs a "statement" by "statement" analysis of the portions under the reasonable person test. 512 U.S. at —— ——, 114 S.Ct. at 2436–37. Under *Standifur*, the hard core declaration against penal interest "and those related statements so closely connected with it as to be equally trustworthy, are admissible as declarations against interest." 310 Md. at 17, 526 A.2d at 962. Of course, what makes the "closely connected" statements "equally trustworthy" is that a reasonable person would have perceived them as contrary to penal interest. *Id.*

Consequently, the majority inaccurately presents *Standifur* when it states that "[t]he central distinction between the *Williamson* approach and our approach in *Standifur* is that 'proximity' between the self-inculpatory and 'collateral' portions no longer guarantees admissibility." 343 Md. at 491, 682 A.2d at 705–06. "[P]roximity," denotes spacial nearness, presumably in the written presentation of the universe under consideration. *Webster's Third New International Dictionary* 1828 (1976). Nowhere in *Standifur* does the word, "proximi-

ty," appear.[2] Proximity is not the test for admissibility under *Standifur*, as shown above.

Even if there are differences between Maryland common law, as enunciated in *Standifur*, and the application of Federal Rule of Evidence 804(b)(3), and even if those differences justify adopting *Williamson* as expressing Maryland common law, there is nothing in *Williamson* that compels the exclusion of the identity and motive portions of White's conversation with Marchewka. *Williamson* involved a declarant who was arrested while possessing nineteen kilograms of cocaine in two suitcases in the trunk of a rental car driven by the declarant. 512 U.S. at ——, 114 S.Ct. at 2433. He admitted knowing that the drugs were there. *Id.* In his post-arrest statements to Drug Enforcement Administration agents, he said that he was transporting the cocaine for the accused, Williamson, who, in another vehicle, had been preceding the declarant and who had seen the traffic stop and the search of the vehicle driven by the declarant. *Id.* The quantity possessed by the declarant would support finding the declarant's intent to distribute. *Id.* at ——, 114 S.Ct. at 2439. In *Williamson,* four justices, joining in a concurrence by Justice Ginsburg, found the blame-shifting to Williamson so self-serving as to render the universe wholly inadmissible. *Id.* at —— – ——, 114 S.Ct. at 2439–40. Five justices in *Williamson,* however, in three separate opinions, remanded for a "statement" by "statement" parsing of the universe.

*Williamson* does not say that the identity of a criminal confederate of the declarant must be excised from a declaration against penal interest. If that were the law, even the remainder of the hard core declaration against penal interest ordinarily would not be connected to the accused and likely would be inadmissible for lack of relevancy. Five justices in *Williamson* remanded for parsing the universe in order possi-

---

2. The term, "proximity," is found in Part II.A of Justice O'Connor's opinion in *Williamson*. There it is stated that the "mere proximity to other, self-inculpatory, statements [of self-exculpatory statements] does not increase the plausibility of the self-exculpatory statements." 512 U.S. at ——, 114 S.Ct. at 2435.

bly to reach an admissible declaration against penal interest. That exercise would be pointless if an ultimate, expurgated version could not even mention the name of the accused in the very case in which the declaration was to be used.

In any event, even a statement by statement parsing of White's conversation with Marchewka results in the admissibility of the identification of Matusky and of his communication of his motive to White. They are important, integrated parts of White's declaration against penal interest.[3] In his conversation with Marchewka, White incriminates himself as an accomplice, or principal in the second degree, to the murders of Trudy Poffell and her daughter, Pam Poffell, and as an accessory after the fact to those murders. Knowledge that a murder was to be committed, or had been committed, is an element of either theory of criminal responsibility. 1 C. Torcia, *Wharton's Criminal Law* §§ 31 and 33 (15th ed. 1993). The knowledge element of the crimes admitted in White's declaration against penal interest is greatly reinforced by the inclusion of the parts of White's conversation with Marchewka in which Matusky is named as the person declaring an intent to kill and expressing the reason for having formulated that intent.

A little background is needed to place White's conversation in perspective. At the time of trial Marchewka had been employed for twenty-five years by AT & T. She was raising her teenage son and preteen daughter. White had been living with her in her home since March of 1989. The two had become engaged in 1991, although White was not divorced from his estranged wife, one of the victims, Pam Poffell. Through White, Marchewka had met Matusky. White and

---

**3.** I understand the majority of this Court to hold that any reference to Matusky is inadmissible, and not simply the conclusory statement that Matusky was the murderer that appears at the beginning of White's conversation with Marchewka. Of course, if White's conversation with Marchewka had stopped at that point, the conclusory statement would not be admissible because White had not yet made any declarations against penal interest. Later incriminating portions of the conversation support the conclusion expressed earlier.

Matusky were "very close friends" who would see one another or go out "[a] couple times a week." The murders occurred on January 24, 1993. When the police interviewed White because he was the estranged husband of one of the victims, Marchewka falsely informed the police that White was shopping with her at the time of the murders. She did this because White was on parole, and he had told Marchewka that, at the time of the murders, he was drinking in a bar in violation of his parole. White's declaration against penal interest to Marchewka was made on Easter Sunday, April 11, 1993, after White had been drinking. The majority points to nothing indicating that the murder investigation had focused on White at that time, much less that he was suspected of being the actual killer.

The legal test as to what constitutes a declaration against penal interest is whether a reasonable person would perceive the statement to be incriminating. One way to test whether White's references to Matusky and to his motive are integral parts of the declaration against penal interest would be to look at a similar declaration that did not contain those references. In that analytical framework a prosecutor would be seeking to convict White of being a principal in the second degree to murder based on White's admission as a party opponent that White met someone in a bar whom White did not know, that that person said that he wanted to murder Trudy and Pam Poffell for reasons that were not expressed, and that White drove the stranger to the Poffell home in the stranger's car. Although our hypothetical illustration contains some evidence of knowledge, the knowledge element is greatly diminished from the standpoint of any weight that would be attributed to it. To a reasonable person, the expurgated version sounds more like the statement of a mentally disturbed individual than a declaration against penal interest.

Much the same argument that the majority of this Court today accepts was rejected by the Supreme Court of Virginia in *Chandler v. Commonwealth,* 249 Va. 270, 455 S.E.2d 219, *cert. denied,* —— U.S. ——, 116 S.Ct. 233, 133 L.Ed.2d 162 (1995). In *Chandler* the Virginia court unanimously affirmed

a death sentence imposed for a murder committed in the course of the armed robbery of a convenience store. The unavailable declarant, Bernice Murphy, was the girlfriend of the accused, Chandler. The witness was a special agent of the Virginia State Police who had taken a statement from Murphy as part of the murder investigation. 455 S.E.2d at 224. "In her statement, Murphy described riding in the car with Chandler [and others] to obtain the gun, and Chandler's discussion about 'going in, robbing the store and leaving.' " *Id.* Murphy remained in the car during the robbery and murder. Murphy described Chandler's statements made when he returned to the car, including, " '[W]hy didn't the man open the register?' and '[H]e got shot over money that wasn't even his.' " *Id.*

Chandler argued to the Virginia court that under *Williamson* "only those portions of the statement which directly implicate Murphy are admissible" and that "Murphy's statements regarding [Chandler's] accounts of the robbery would be inadmissible." 455 S.E.2d at 225. The Virginia court first observed that *Williamson* "concerned the interpretation of the Federal Rules of Evidence" which were "not applicable here." *Id.* The court then held:

> "Furthermore, in the present case, Murphy's recitations of statements made by Chandler showed her knowledge of and complicity in the criminal act and exposed her to liability as an accessory to the crimes. Accordingly, Murphy's entire statement is admissible as a declaration against penal interest."

*Id.*

Similarly, in the instant matter, White's statements that it was Matusky who communicated the intent to murder and the reason why "showed [White's] knowledge of and complicity in the criminal act and exposed [him] to liability as an accessory to the crimes."